STATE OF IOWA v. CHICAGO, MILWAUKEE & ST. PAUL
RAILWAY COMPANY, Appellant.

**Railways:**   INTRASTATE COMMERCE.   Where a coal dealer in this
state procured a shipment of coal from Illinois to himself as con-
signee and upon its receipt paid the freight to that point, had the
cars in which it was originally shipped placed upon the transfer
tracks and tendered to defendant bills of lading for shipment to
other points within this state, there was a delivery of the ship-
ment to the purchaser at his place of business; and the subsequent
transportation thereof under the new bills of lading was not
interstate but intrastate transportation, and subject to the laws
of this state in relation thereto.

**Same:**   BOARD OF RAILWAY COMMISSIONERS.: REGULATIONS.   Under the
statutes of this state the Board of Railroad Commissioners has
general supervision of the operation of railways within the state,
and may make an order requiring a railway company to accept
for transportation the cars of a private owner or of a company not
a connecting carrier; and such railway company can not refuse to
transport the shipment contained therein unless transferred to
its own cars, notwithstanding the fact that Code, section 2116,
makes reference to the transportation of cars of a connecting
road.

*Appeal from Polk District Court.*—HON. HUGH BRENNAN,
Judge.

THURSDAY, APRIL 6, 1911.

ACTION in equity to require the defendant company
to obey an order of the Railroad Commissioners of the
state.   The defendant appeals from a judgment for the
plaintiff.—*Affirmed.*

*William Ellis* and *Cook, Hughes & Sutherland,* for
appellant.

*H. W. Byers,* Attorney-General, and *George Cosson,* for the State.

SHERWIN, C. J.—The controlling facts in this case are as follows: The Clark Coal & Coke Company and other companies doing a wholesale coal business in Davenport, Iowa, had for a number of years shipped coal from points in Illinois to themselves as consignees at Davenport, and, upon receipt of orders for said coal, they would pay the freight charges of the initial carrier in full, have the cars of coal placed on the interchange track, and thereafter tender a written billing for said coal to the defendant company to be shipped to various points in Iowa under the Iowa distance tariff. The defendant company finally refused to receive said coal under such billing, unless the same was unloaded and reloaded in its own equipment. Complaint was thereupon made to the Board of Railroad Commissioners of the state, and upon a hearing an order was made requiring the defendant to accept said coal for transportation in whatever equipment loaded, without requiring a reloading in its own equipment. The defendant railway company refused to comply with the order of the commissioners, and this action was thereupon brought to compel compliance therewith. The defendant answered the petition, and also filed a cross-petition asking that the said order of the Board of Railroad Commissioners be set aside; the substance of the answer and the cross-petition being that the order was an attempt on the part of the board to regulate commerce between the several states, that it relates to shipments between the states and not to a shipment originating within the State of Iowa, and further alleging that the Board of Railroad Commissioners was and is without authority to make said order, because it is contrary to the provisions of the Constitution of the United States.

It was also alleged that the board was without author-

·ity to require the defendant to accept the cars mentioned
and contemplated by said order, because the statutes of
the state only require it to accept cars from the connecting
carrier itself, and not from an individual or private person
not operating a line of railway. It should first be deter-
mined whether, under the facts presented, the shipment
tendered to the defendant was an interstate shipment. That
the shipment from Illinois to Davenport was such a ship-
ment is unquestioned, but it does not necessarily follow that
the shipment tendered to the defendant was merely a con-
tinuation of such interstate shipment. · There could be an
ending of its interstate character by a delivery to the con-
signee, and thereafter its transportation over the defend-
ant's road from Davenport to some other point within the
state would be an intrastate shipment only, so that the
primary question for determination is whether there was,
in fact, a delivery by the initial carrier to the consignees
in Davenport.

The agreed statement of facts shows that the coal
was originally consigned to the coal companies in Daven-
port; that it was held there until sales of the same were
made, and that then the consignee paid the
freight to the initial carrier, and had the
cars placed on the interchange track for the
purpose of shipping the coal to the purchasers thereof on
the line of the defendant's road. The initial carrier had
thus surrendered all control over the cars and the con-
signees had themselves assumed full possession and con-
trol of them. The responsibility of the carrier was ended
by these acts of the consignees, and thereafter they as-
sumed the risks incident to their possession. We are of
the opinion that there was a delivery of the coal to the
consignees in Davenport, and that its transportation under
another billing governed by the Iowa distance tariff be-
tween two points in the state is not an interstate shipment,
but is an intrastate one that is subject to the laws of the

1. RAILWAYS: in-
   trastate com-
   merce.

state.  The case of *Gulf, C. & S. F. R. Co. v. Texas,* 204
U. S. 403 (27 Sup. Ct. 360, 51 L. Ed. 540), is directly in
point, and is decisive of the question.  See, also, *Mer-
chants' Transfer Co. v. Board of Review,* 128 Iowa, 732,
and cases cited therein.  The appellant contends that the
decision in *Railroad Co. v. Texas* is not controlling here,
because there the carrier accepted the shipment, but it is
clear that the carrier can not fix the character of a ship-
ment by its act of accepting or rejecting it.  The cases re-
lied upon by the appellant to sustain its contention that
the shipments in question were interstate are so unlike the
instant case in their facts that they are not controlling.

In our view of this case, the serious question is wheth-
er the Board of Railroad Commissioners had the power un-
der the statute to make an order requiring the defendant
2. SAME: board of    to accept the shipment in question in the
railway com-        cars of a private owner or in the cars of
missioners:
regulations.        another carrier.  The Board of Railroad
Commissioners seems to have based its order on the follow-
ing provision of section 2116 of the Code Supplement:
"Every railroad corporation shall . . . furnish cars to
any and all persons who shall apply therefor . . . and
shall also receive and transport in like manner the empty
or loaded cars furnished by any connecting road."  But the
defendant contends that this statute does not require the
acceptance of cars from any person save and except a "con-
necting road," and that the Clark Coal Company is not a
connecting road within the meaning of the statute.  A
literal construction of this section would undoubtedly sus-
tain the defendant's position, but whether authority for the
order be found in this section or not, if such authority is
given by other parts of the statute the order should be sus-
tained.  Code, section 2112, says that the Board of Rail-
road Commissioners "shall have the general supervision of
all railroads in the state operated by steam," and section
2113 provides that, when in the judgment of the board any

change in the mode of operating the road or conducting its business "is reasonable and expedient in order to promote the . . . convenience and accommodation of the public, the board shall serve . . . notice upon such corporation . . . of the changes which it finds to be proper." The power of supervision given by section 2112 is broad, and in our judgment sufficient warrant alone for the order in question. To supervise is to superintend, to direct, to have charge over, with the power of direction. Webster's International Dictionary. The Secretary of the Interior, being charged by the United States statutes with the supervision of the office relating to the public lands, was held to have the power to review all the acts of the local officers, and to correct and direct a correction of any error committed by them. *Van Tongeren v. Heffernan,* 5 Dak. 180 (38 N. W., 52). An Act, giving a board of transportation general supervision of railroads, clothes the board with the necessary powers for such purpose. *State v. Fremont, E. & M. V. R. Co.,* 22 Neb. 313 (35 N. W. 118). Of course, the power conferred by section 2112 might be limited in respect to any particular subject, but we find nothing in the statute which seems to impose a limitation on the matter under consideration. On the contrary, the tenor of the entire statute seems to be in harmony with the views above expressed. Section 2113 says that the board shall notify the railroad company of any change in the mode of operating its road or conducting its business that may be considered reasonable and expedient in order to promote the convenience and accommodation of the public. It certainly would be a great inconvenience to the public to be compelled to unload and reload in the defendant's equipment every car of coal that the dealer might wish to send out over the defendant's road simply because the coal was received by him in cars belonging to a private person or to another road.

In *State v. Mason City & Ft. Dodge R. Co.,* 85 Iowa,

516, we held that the railroad commissioners had authority, under the provisions of section 2113, to order a private crossing for the benefit of the landowner. No just distinction can be made between that case and this one, and hence it is authority for our conclusion that the order in question was authorized by section 2113. The general intent of the statute is further made manifest by Code Supp. 1907, section 2153, which provides that: "Every owner or consignor of freight to be transported by railway from any point within this state to any other point within this state shall have the right to require that the same shall be transported over two or more connecting lines of railway, to be transferred at the connecting point or points without change of car or cars, if in carload lots, . . . and it shall be the duty, upon request of any such owner or consignor of freight, . . . to transport the freight without change of car or cars, if the shipment be in carload lot or lots." The Legislature in the statute just quoted evidently recognized the long-continued custom of railroads of receiving the cars of other roads for the transportation of freight over their own roads without breaking bulk. It is a custom so general as to be within the knowledge of all men, and it has been practised so long that the courts will take judicial notice of it. *Burlington, C. R. & N. Ry. Co. v. Dey,* 82 Iowa, 312. Under the authority of section 2153, the owner or consignor of freight for shipment from one point to another within the state may require the carrier to transport it without change of cars. We can see no reason why the same requirement should not be held proper under the facts presented here, and we believe that the Legislature intended to and did clothe the board with the power to make such a requirement when deemed reasonable and expedient for the convenience and accommodation of the shipper. The fact that section 2116 refers only to cars of connecting roads is not very significant in view of the general powers conferred by sections 2112 and 2113. It prob-

ably never occurred to the members of the Legislature that a railroad company would refuse to accept freight in carload lots unless loaded in its own cars. An examination of almost any freight train on any road in the United States would furnish a sufficient reason for a contrary conclusion.

We reach the conclusion that the judgment should be, and it is, *affirmed*.