# CHICAGO, MILWAUKEE AND ST. PAUL RAILWAY COMPANY *v.* STATE OF IOWA.

## ERROR TO THE SUPREME COURT OF THE STATE OF IOWA.

No. 176.   Argued March 3, 1914.—Decided April 13, 1914.

Whether commerce is interstate or intrastate must be determined by the essential character of the commerce and not by mere billing or forms of contract.

The reshipment of an interstate shipment by the consignees in the cars in which received to other points of destination does not necessarily establish a continuity of movement or prevent the shipment to a point within the same State from having an independent and intrastate character.

In this case, *held*, that shipments of coal when reshipped, after arrival from points without the State and acceptance by the consignees, to points within the State on new and regular billing forms constituted intrastate shipments and were subject to the jurisdiction of the State Railroad Commission.

Whether the common law or statutory provisions apply to a case is for the state court to determine, and so *held*, that in Iowa the State Railroad Commission has power under the state law to require common carriers to use the equipment of connecting carriers to transport shipments from the points of original destination to other points within the State.

A State may, so long as it acts within its own jurisdiction and not in hostility to any Federal regulation of interstate commerce, compel a carrier to accept, for further reshipment over its lines to points within the State, cars already loaded and in suitable condition; and an order to that effect by the State Railroad Commission is not

unconstitutional as depriving the carrier of its property without due process of law.

Where it appears that an order of the State Railroad Commission simply required the carrier to continue a former practice, and the record does not disclose that it involves additional expense over the new practice proposed, this court is not justified in holding that the order is unconstitutional as depriving the carrier of its property without due process of law because it subjects it to an unreasonable expense.

This court cannot, at the instance of the carrier, hold an order of the State Railroad Commission, otherwise valid, requiring the carrier to forward interstate shipments after receipt to intrastate points in the same equipment, void as interfering with interstate commerce because the cars are vehicles of interstate commerce, when no actual interference with such commerce is shown nor is any such question raised between the shippers and the owners of the cars.

152 Iowa, 317, affirmed.

THE facts, which involve the validity and also the constitutionality under the commerce clause of, and the Fourteenth Amendment to, the Federal Constitution, of an order of the State Railroad Commission of Iowa in regard to carload shipments of coal, are stated in the opinion.

*Mr. O. W. Dynes*, with whom *Mr. C. S. Jefferson* and *Mr. Burton Hanson* were on the brief, for plaintiff in error:

The proposed shipment from Davenport to destination in Polk County, Iowa, was an intrastate shipment.

At common law a carrier is not compelled to use foreign equipment designated by the shipper, but has the right to use its own equipment to transport property over its own rails.

There is no statute in Iowa that compels the initial carrier to receive a shipment in a foreign car and the statute of that State requiring a connecting carrier, acting as such, to receive shipments coming to it over other lines in foreign cars, does not apply to the case at bar for the reason that plaintiff in error was the initial carrier and not a connecting carrier.

The order of the Board of Railroad Commissioners was void *ab initio* because its enforcement would deprive plaintiff in error of its constitutional right to contract, secured by the Fourteenth Amendment; also because its enforcement would entail the taking of property without due process of law, in contravention of the Fourteenth Amendment.

The order, if enforced, would deny to the plaintiff in error the equal protection of the laws, contrary to the Fourteenth Amendment.

The order is also void because its enforcement would interfere with and burden interstate commerce through interfering with and burdening the instruments of interstate commerce.

In support of these contentions, see Act to Regulate Commerce, 24 Stat. 379; *Allgeyer* v. *Louisiana,* 165 U. S. 578, 589; *Atchison &c. R. R.* v. *Denver & N. O. R. R.,* 110 U. S. 667, 680; *Atchison &c. Ry. Co.* v. *United States,* 232 U. S. 199; *Baltimore & Ohio R. R. Co.* v. *United States et al.,* 215 U. S. 481; *Central Stockyards* v. *L. & N. Ry. Co.,* 192 U. S. 568, 571; Iowa Code, § 2116; *Id.,* Supp., 1907, § 2153; *Coe* v. *Errol,* 116 U. S. 517; *Gulf, Col. &c. Ry. Co.* v. *Texas,* 204 U. S. 403; *Int. Com. Comm.* v. *I. C. R. R. Co.,* 215 U. S. 452, 474; *Lake Shore & M. S. Ry. Co.* v. *Smith,* 173 U. S. 684, 698; *Little Rock &c. Ry. Co.* v. *St. Louis &c. Ry. Co.,* 63 Fed. Rep. 775; *Louis. & Nash. Ry. Co.* v. *Central Stockyards,* 212 U. S. 132, 144; *Louis. & Nash. R. R. Co.* v. *Garrett,* 231 U. S. 298; *Louis. & Nash. R. R. Co.* v. *Siler,* 186 Fed. Rep. 176; *McCulloch* v. *Maryland,* 4 Wheat. 415, 426; *McNeill* v. *Southern Ry. Co.,* 202 U. S. 543; *Minnesota Rate Cases,* 230 U. S. 352, 400; *Mo. & Ill. Coal Co.* v. *I. C. R. R. Co.,* 22 I. C. C. 39; *Mo. Pac. Co.* v. *Nebraska,* 164 U. S. 403, 417; *Nor. Pac. Ry. Co.* v. *Washington,* 222 U. S. 370, 377; *O'Ferrall* v. *Simplot,* 4 Clarke (Iowa), 381, 399; *Ohio R. R. Comm.* v. *Worthington,* 225 U. S. 101; *Oregon Short Line* v. *Nor. Pac.*

*R. R. Co.,* 51 Fed. Rep. 465, 472; *Smith* v. *Alabama,* 124 U. S. 465, 473; *So. Pac. Terminal Co.* v. *I. C. C.,* 219 U. S. 498; *Southern R. Co.* v. *United States,* 222 U. S. 20, 26; *Texas & N. O. R. R. Co.* v. *Sabine,* 227 U. S. 111.

*Mr. George Cosson,* Attorney General of the State of Iowa, with whom *Mr. Henry E. Sampson* was on the brief, for defendant in error:

The Board of Railroad Commissioners have authority under the statutes of Iowa to make the order requiring the Milwaukee Railway Company to receive coal on the interchange track at Davenport, Iowa, in the equipment in which the coal was then loaded, and to prohibit the Milwaukee Railway Company from requiring the coal companies at Davenport to unload the coal and reload the same in Milwaukee equipment as a condition precedent' to its moving in intrastate commerce over the lines of the Milwaukee Railroad Company in Iowa. *State* v. *Chicago, Milwaukee Ry. Co.,* 152 Iowa, 317; *Louis. & Nash. R. R. Co.* v. *Kentucky,* 183 U. S. 503.

The order of the Board does not deny plaintiff due process either by taking its property or by denying it the right of the liberty of contract.

A reasonable regulation of public service corporations or persons and a reasonable limitation of the right to contract, if made under the police power in the interests of the public health, the public safety, the public morals, or the public welfare, convenience, necessity or prosperity, is valid. *Grand Trunk Ry. Co.* v. *Mich. Ry. Com.,* 231 U. S. 457; *Wis. &c. R. R. Co.* v. *Jacobson,* 179 U. S. 287; *Atlantic Coast Line* v. *Nor. Car. Com.,* 206 U. S. 1; *Holden* v. *Hardy,* 169 U. S. 366; *Slaughter House Cases,* 16 Wall. 36; *C., M. & St. P. Ry. Co.* v. *Solan,* 169 U. S. 133; *Carroll* v. *Greenwich,* 199 U. S. 401; *C., B. & Q. Ry. Co.* v. *Mc-Guire,* 219 U. S. 549; *Engel* v. *O'Malley,* 219 U. S. 128; *West. Un. Tel. Co.* v. *Commercial Mill. Co.,* 218 U. S. 406;

*Noble State Bank* v. *Haskell*, 219 U. S. 104; *Assaria State Bank* v. *Dolley*, 219 U. S. 121; *Mobile, Jackson R. R. Co.* v. *Mississippi*, 210 U. S. 187; *C., R. I. & P. Ry. Co.* v. *Zernecke*, 183 U. S. 582.

On the other hand, an arbitrary, unreasonable taking of property or limiting of the right to contract is invalid, especially where the statute bears no relation to correcting some public evil or promoting the health, safety, morals, welfare or prosperity of a State or community. *Lake Shore Ry.* v. *Smith*, 173 U. S. 687; *Central Stock Yards* v. *Louis. & Nash. R. R.*, 192 U. S. 568; *Mo. Pac. Ry.* v. *Nebraska*, 164 U. S. 403; *McNeil* v. *Southern Ry. Co.*, 202 U. S. 543, 561; *Allgeyer* v. *Louisiana*, 165 U. S. 579; *Louis. & Nash. R. R. Co.* v. *Stock Yards Co.*, 212 U. S. 132.

Almost the precise question was passed upon by the Supreme Court of Iowa in the case of *B., C. R. & N. Ry. Co.* v. *Dey*, 82 Iowa, 312, 335.

This case does not present facts similar to those in the case of *Central Stock Yards* v. *Louisville Ry. Co.*, 192 U. S. 568.

A plaintiff in error can complain only of the injury which he himself may sustain and may not strike down a statute as violative of the Federal Constitution because of its possible injury to some one else. *Standard Stock Food Co.* v. *Wright*, 225 U. S. 540, p. 550.

The order of the Commission in question does not deny the railroad company the equal protection of the laws. *Wisconsin* v. *Jacobson*, 179 U. S. 287; *Atlantic Coast Line* v. *Nor. Car. Corp. Comm.*, 206 U. S. 1, 19; *Grand Trunk Ry. Co.* v. *Mich. R. R. Comm.*, 231 U. S. 457; *West. Un. Tel. Co.* v. *Commercial Milling Co.*, 218 U. S. 406; *Griffith* v. *Kentucky*, 218 U. S. 563; *Kentucky Union Co.* v. *Kentucky*, 219 U. S. 140; *German Alliance Ins. Co.* v. *Hale*, 219 U. S. 307; *District of Columbia* v. *Brooke*, 214 U. S. 138; *Brown-Forman Co.* v. *Kentucky*, 217 U. S. 563; *Field* v. *Barber Asphalt Co.*, 194 U. S. 618; *McLean* v. *Arkansas*, 211 U. S.

546; *Williams* v. *Arkansas*, 217 U. S. 79; *Carroll* v. *Greenwich Ins. Co.*, 199 U. S. 401; *S. W. Oil Company* v. *Texas*, 217 U. S. 114; *Mo., K. & T. Ry. Co.* v. *May*, 194 U. S. 267.

The order does not offend against the commerce clause of the Federal Constitution; it is not a burden on interstate commerce, but rather an aid to interstate commerce.

The order is in aid of interstate commerce because it tends to a more prompt releasing of cars. Time is lost in the unnecessary unloading and reloading of cars at Davenport, Iowa. The time consumed in the unloading and reloading of the cars in question would often be equal to that required in transporting the car over the entire local shipment. In any event the regulation being reasonable, it is clearly within the police power of the State.

If the regulation is reasonable and Congress has remained silent upon the specific matter, it is neither a burden on interstate commerce nor in conflict with the acts of Congress to regulate interstate commerce. *Grand Trunk Ry.* v. *Mich. Ry. Comm.*, 231 U. S. 457; *Savage* v. *Jones*, 225 U. S. 501; *Standard Stock Food Co.* v. *Wright*, 225 U. S. 540; *Reid* v. *Colorado*, 187 U. S. 137, 147; *Nor. Pac. Ry. Co.* v. *Washington*, 222 U. S. 370; *Cleveland &c. Ry. Co.* v. *Illinois*, 177 U. S. 514; *Minnesota Rate Cases*, 230 U. S. 352; and see *McLean* v. *Denver &c. Ry. Co.*, 203 U. S. 38, 55; *Smith* v. *Alabama*, 124 U. S. 465; *Nashville Ry. Co.* v. *Alabama*, 128 U. S. 96; *N. Y. R. R. Co.* v. *New York*, 155 U. S. 628; *Hennington* v. *Georgia*, 163 U. S. 299.

MR. JUSTICE HUGHES delivered the opinion of the court.

This suit was brought by the State of Iowa to obtain a mandatory injunction requiring the Chicago, Milwaukee & St. Paul Railway Company to comply with an order of the State Railroad Commission promulgated December 22, 1909. The defendant answered, denying the validity of

the order, and also filed a cross-petition to set it aside alleging that it was repugnant to the Constitution of the United States as an attempt to regulate interstate commerce and to deprive the Company of its property without due process of law and, further, that the Commission was without authority under the laws of the State to make the order. Judgment, sustaining the action of the Commission and directing compliance, was affirmed by the Supreme Court of the State. 152 Iowa, 317.

It appeared that the Railway Company, in 1909, had refused to accept shipments of coal in carload lots at Davenport, Iowa, for points in that State when tendered in cars of other railroad companies by which the coal had been brought to Davenport from points in Illinois. The Railway Company insisted that it was entitled to furnish its own cars. The Clark Coal and Coke Company, operating a branch at Davenport, complained of this rule to the Railroad Commission, stating that it was a departure from the practice which had obtained for several years with respect to such shipments, that the Clark Company paid all charges to Davenport and on receiving orders from its customers tendered written billing for transportation from Davenport to the designated points, and that it was unreasonable for the Railway Company to require in such cases that the coal should be unloaded and reloaded in its own cars. A hearing was had before the Commission at which other shippers intervened, adopting the coal company's complaint. The facts were presented in an agreed statement, as follows:

"The Clark Coal & Coke Company of Davenport, Iowa, have been making shipments of coal from points in Illinois to Davenport by the Chicago, Rock Island & Pacific Railway Company and the Chicago, Burlington & Quincy Railroad Company; that said coal is then placed by the railroad bringing it into Iowa on an interchange track at Davenport; that all charges from point of origin

in Illinois to Davenport, Iowa, are paid by the Clark Coal
& Coke Company to the railroad company bringing said
coal; that thereupon complainant had notified the re-
spondent railway company of the placement of said coal
and that it desired to ship said coal by the respondent
railway company to different points on its own line, and
tendered a written billing from Davenport to the point so
designated; that thereupon respondent railway company
has accepted said written billing from Davenport to said
point and taken said cars from said interchange track to
its own line and transported the same in accordance with
said written billing; that the respondent railway company
has changed its method of doing business in the above
respects by its printed order and now refuses to accept
said written billing and take said cars from said inter-
change track and transport them over its own line to the
point designated by said billing, unless said coal is loaded
in equipment belonging to respondent railway company.
Respondent railway company, by its answer to the com-
plaint, alleges that it 'will furnish cars for shipment of coal
from Davenport to any point in Iowa, as provided by
Iowa Distance Tariff, but will not accept shipments
originating at Davenport, billed from Davenport in the
equipment of other carriers,' and its readiness and ability
to furnish cars of its own for shipment is not controverted
and will therefore be taken to be true. It will thus be
observed that before the respondent railway company will
take coal for transportation on its own line, in equipment
other than its own, it requires that the same shall be un-
loaded and reloaded into its own cars."

Thereupon, the Commission rendered a decision in
favor of the shipper and entered the following order to
which this controversy relates:

"In accordance with the conclusions heretofore ex-
pressed, it is therefore ordered by the Board of Railroad
Commissioners of Iowa that upon arrival of loaded cars of

coal at the city of Davenport, upon any line of railroad, when said cars are placed upon the interchange track at Davenport as ordered or requested by the owner or consignee of said cars and the freight paid thereon, and the ordinary billing in use by the respondent railway is tendered to it for a billing of said cars so placed to a point on its own line within the State of Iowa, that the respondent railway company be and it is hereby ordered and required to accept said billing, receive said car or cars so billed and transport them on its own line to the point designated by the owner or consignee in said billing; and that it receive said car or cars in whatever equipment the same may be loaded, without requiring an unloading and reloading into its own equipment, and transport said car or cars over its own line to points within this State, so loaded, without unloading or reloading as above set forth, in the same manner that it receives cars from connecting lines loaded in its own equipment. It is expressly understood, however, in this order, that no questions in relation to switching charges are determined.''

The Railway Company contended, both before the Commission and in the state court, that the shipments in question were interstate; and it was alleged in its answer that the method of transportation resorted to was a device of shippers to secure, by adding the rate from the initial point in Illinois to Davenport to the rate established by the Iowa distance tariff from Davenport to other points in the State, a lower rate than that applicable to an interstate shipment from the point in Illinois to the point of final destination.

The Railroad Commission held that the transportation desired from Davenport was a purely intrastate service, saying: ''Under the admitted facts, the city of Davenport became a distributing point for coal shipped by the consignor. The certainty in regard to the shipments of coal ended at Davenport. The point where the same was to be

shipped beyond Davenport, if at all, was determined after the arrival of the coal at Davenport. The coal was under the control of the consignee and he could sell it in transit or at Davenport or reconsign it to a point, on respondent's railway, or any other railway, at his own discretion." Upon the trial of the present suit in the state court, the State introduced in evidence the proceedings, decision and order of the Commission, and without further evidence both parties rested. The Supreme Court of the State took the same view of the facts that the Commission had taken and accordingly held that the shipments were intrastate. The court said that the facts showed that the coal was originally consigned to the coal company in Davenport, that it was there held until sales were made, that the consignee had taken delivery, paying the freight to the initial carrier and assuming full control. 152 Iowa, 317, 319.

The record discloses no ground for assailing this finding. It is undoubtedly true that the question whether commerce is interstate or intrastate must be determined by the essential character of the commerce and not by mere billing or forms of contract. *Ohio Railroad Commission* v. *Worthington,* 225 U. S. 101; *Texas & N. O. R. R. Co.* v. *Sabine Tram Co.,* 227 U. S. 111; *Railroad Commission of Louisiana* v. *Texas & Pacific Rwy. Co.,* 229 U. S. 336. But the fact that commodities received on interstate shipments are reshipped by the consignees, in the cars in which they are received, to other points of destination, does not necessarily establish a continuity of movement or prevent the reshipment to a point within the same State from having an independent and intrastate character. *Gulf, Colorado & Santa Fe Rwy. Co.* v. *Texas,* 204 U. S. 403; *Ohio Railroad Commission* v. *Worthington,* 225 U. S. 101, 109; *Texas & N. O. R. R. Co.* v. *Sabine Tram Co.,* 227 U. S. 111, 129, 130. The question is with respect to the nature of the actual movement in the particular

case; and we are unable to say upon this record that the state court has improperly characterized the traffic in question here. In the light of its decision, the order of the Commission must be taken as referring solely to intrastate transportation originating at Davenport.

In this view, the validity of the Commission's order is challenged upon the ground that at common law the carrier was entitled to use its own equipment, and that the statute of the State of Iowa as to the receiving of cars from connecting carriers (Code, § 2116) is inapplicable for the reason that with respect to the transportation in question the plaintiff in error was the initial carrier. But the obvious answer is that what is required by the law of Iowa has been determined by the Supreme Court of that State. That court, examining the various provisions of the Iowa Code which have relation to the matter, has held that the order was within the authority of the Railroad Commission. 152 Iowa, 317, 320, 321.

Further, the plaintiff in error insists that the enforcement of the order would deprive it of its liberty to contract, and of its property, without due process of law, and would deny to it the equal protection of the laws in violation of the Fourteenth Amendment. We find these objections to be without merit. It was competent for the State, acting within its jurisdiction and not in hostility to any Federal regulation of interstate commerce, to compel the carrier to accept cars which were already loaded and in suitable condition for transportation over its line. The requirement was a reasonable one. It cannot be said that the plaintiff in error had a constitutional right to burden trade by insisting that the commodities should be unloaded and reloaded in its own equipment. Upon this point the case of *Wisconsin &c. R. R. Co.* v. *Jacobson,* 179 U. S. 287, is decisive. There is no essential difference, so far as the power of the State is concerned, between such an order as we have here and one compelling the

carrier to make track connections, and to receive cars from connecting roads, in order that reasonably adequate facilities for traffic may be provided. See also *Minneapolis & St. Louis* v. *Minnesota*, 186 U. S. 257, 263; *Atlantic Coast Line* v. *North Carolina Corp. Com'n*, 206 U. S. 1, 19, 27; *Missouri Pacific Rwy. Co.* v. *Kansas*, 216 U. S. 262; *Grand Trunk Rwy. Co.* v. *Michigan Railroad Commission*, 231 U. S. 457, 468.

It is argued that it was unreasonable to subject the Railway Company to the expense incident to the use of the cars of another carrier when it was ready to furnish its own. The record affords no sufficient basis for this contention. What the expense referred to would be was not proved, and, in the absence of a suitable disclosure of the pertinent facts, no case was made which would justify the conclusion that in its practical operation the regulation would impose any unreasonable burden. On the other hand, the agreed statement makes it evident that prior to the change which gave rise to this controversy it was the practice of the Company to accept such shipments.

Finally, it is said that the order of the Commission interferes with interstate commerce because the cars in question were the vehicles of that commerce and were brought into the State as such. No question, however, is presented here as between the shippers and the owners of the cars, and no actual interference with interstate commerce is shown. Nor does it appear that any regulation under Federal authority has been violated.

The plaintiff in error has failed to establish any ground for invalidating the order of the Commission and the judgment must be affirmed.

*Affirmed.*