# Crow, Appellant, *v.* Ursina & North Fork Railway Company.

*Railroads—Interstate commerce—Rates—Railroad wholly within Pennsylvania—Shipments for points outside the State.*

A contract made in 1910 for a freight rate good for ten years made by a railroad company whose line is wholly within Pennsylvania with a Pennsylvania lumber company, will not be good as against a higher rate filed in 1915 with the Interstate Commerce Commission, where it appears that the lumber company sold all its product to another corporation; that the lumber was loaded on the cars which were transported by the railroad company to its terminus; that the cars were not unloaded at this point, but continued on their journey to points outside of Pennsylvania; that when the lumber was loaded its destination was determined; and that way bills made out at the shipping point in the name of the purchasing company were attached to the car at the terminal point, upon which waybill the point of destination was designated.

When freight actually starts to its course of transportation through and out of the State, it becomes a part of interstate commerce, and the essential nature of the movement and not the form of the bill of lading determines the character of the commerce involved.

Argued May 1, 1916. Appeal, No. 98, April T., 1916, by plaintiff, from decree of C. P. Somerset Co. Equity Docket, 1915, No. 6, dismissing bill in equity in case of W. E. Crow and T. B. Palmer, Receivers of United Lumber Company v. Ursina & North Fork Railway Company.

Before ORLADY, P. J., HENDERSON, KEPHART, TREXLER and WILLIAMS, JJ.  Affirmed.

Bill in equity for an injunction.

RUPPEL, P. J., found the facts to be as follows:

1. The United Lumber Company is a corporation chartered under the laws of Pennsylvania doing business in Somerset County, Pennsylvania, with a manufacturing plant at the village of Humbert, in said county, and by proceedings in equity, William E. Crow and Thomas B. Palmer were duly appointed receivers of said plaintiff and have been continuing the operations of said company and are in possession of the property of said company.

2. The defendant, Ursina and North Fork Railway Company, is a public service corporation chartered under the General Railway Act of the State, and has as its northern terminus, Mays Run Transfer near the village of Humbert, and its southern terminus a junction with the Baltimore and Ohio Railroad, a little over half a mile west of the Borough of Ursina in said county; the said road is about five miles in length and is located and operated wholly within said County of Somerset and State of Pennsylvania.

3. During the year 1910, or shortly prior thereto, the plaintiff, United Lumber Company, became the owner of large tracts of timber lands in the County of Somerset, some of which were situate near the village of Humbert, and others extending several miles northward from said village; and during said year of 1910 the said United Lumber Company procured the incorporation of the United Railway Company, a corporation which built lines of railway from said village of Humbert northward to and through the timber lands of the plaintiff and over which United Railway Company the lumber of the plaintiff was delivered from its timber lands to the defendant company at Mays Run Transfer for transportation.

4. On December 27, 1910, the plaintiff and defendant entered into a written article of agreement as set forth

in paragraph 4 of Plaintiff's Bill of Complaint, by which it was provided:

"(1)  The lumber company agrees to build a railroad from Humbert  to its timber lands near Barronvale, about nine miles from Humbert.

"(2)  The railway company agrees to transport the lumber of the lumber company from Humbert to the B. & O. Railroad at Ursina at five dollars per car.

"(3)  The lumber company grants the right to the railway company to use the tracks of the lumber company from Humbert to a coal mine known as Maud Mine No. 1, without charge.

"(4)  The railway company agrees to transport empty cars from Ursina Junction to Humbert free of charge."

Other minor provisions are contained in the agreement, and it is further provided that the contract shall remain in force for a period of ten years, with the option of the lumber company to renew it for an additional period of ten years.

5. As part of the arrangement between the plaintiff and defendant to this case, the Metropolitan Life Insurance Company of New York, which owned the stock of the Ursina and North Fork Railway Company and owned a large amount of real estate in the vicinity of Humbert, including coal lands, miners' houses, etc., agreed to furnish a site for a mill seat of the plaintiff company at the town of Humbert, and also agreed to allow the lumber company the use of certain dwelling houses at the village of Humbert for the occupancy of the employees of the lumber company, the employees to pay the usual rent to the lumber company to be paid by them over to the Metropolitan Life Insurance Company.

6. The defendant company complied with the terms of said agreement from its date until about the 26th day of April, 1915, during which period it transported for the plaintiff large quantities of lumber, ties, etc., in carload lots, for which it was fully paid, and payment was accepted by the defendant company at the agreed rate of

five dollars per car; that said cars were intended to be and were in fact delivered to the Baltimore and Ohio Railroad at Ursina Junction for shipment over said B. & O. Railroad, and a large percentage of such cars delivered for transportation as aforesaid were destined to points beyond the State of Pennsylvania.

7. Shipments of lumber under the contract between the parties were made as follows: Representatives of the plaintiff lumber company made requisition upon the defendant railway company for cars and indicated in said requisition the points to which said cars of lumber were destined, and when the cars were loaded, plaintiff delivered to the agents of the railway company a way bill to be attached to the car, upon which way bills the point of destination was designated; and at the same time the defendant's agents were furnished with a standard bill of lading to be given to the agent of the Baltimore and Ohio Railroad at Ursina. The defendant railway company did not issue to the plaintiff lumber company through bills of lading on the shipments received from it, but transported the cars to Ursina Junction and there delivered them to the Baltimore and Ohio Railroad Company for shipment by it to the ultimate destination of such shipments, and the defendant received from the plaintiff lumber company the charges provided for in the said contract.

8. The plaintiff sold its lumber and other products through the Palmer and Semans Lumber Company, a corporation with an office at Uniontown, Pa., under a contract by which the Palmer and Semans Lumber Company was to sell the lumber for the plaintiff and was to receive a commission on the prices received for the products, and was to be responsible to the plaintiff for the prices reported at the time the shipments were made; and it is claimed by the plaintiff in this proceeding that the Palmer and Semans Lumber Company became the owners of the lumber when it reached Ursina Junction, and that the plaintiffs thereafter had no further con-

nection with the lumber; but the lumber was not consigned in any instance to the Palmer and Semans Lumber Company nor did the defendant have any knowledge of the agreement between the plaintiff and the Palmer and Semans Lumber Company in connection with the shipments. The consignments were made direct to the parties who purchased the lumber from the Palmer and Semans Lumber Company.

9. Prior to the execution of the contract between the plaintiff and the defendant in 1910, to wit, in 1907, the, defendant, Ursina and North Fork Railway Company had filed with the Interstate Commerce Commission at Washington, D. C., its tariff or schedule of rates for transportation over its line, and the rates or charges mentioned and agreed upon in the contract between the parties hereto were in accordance with the rates as designated in the schedule filed with the Interstate Commerce Commission—the said schedule or tariff is designated as Schedule No. 1.

10. On March 25, 1915, the defendant railway company filed with the Interstate Commerce Commission at Washington, a new schedule or tariff of rates to become effective April 26, 1915, and this schedule was likewise designated as Schedule No. 1. This schedule was posted as required by law, and the plaintiff had notice of its filing; and thereafter the defendant refused to ship lumber for the plaintiff under the contract of 27th December, 1910, and demanded freight at the rate fixed in the schedule or tariff of rates above mentioned; thereupon, on the 28th of April, 1915, the plaintiff filed this bill in equity, asking for an injunction to restrain the defendant from enforcing the rates as provided by said schedule, and asking the court to compel an adherence to the contract between the parties. Pending the disposition of this case and while the preliminary injunction was in force, the defendant railway company filed with the Interstate Commerce Commission a new schedule of rates on the 8th of May, 1915, designated as Schedule

No. 3, in which the rates or tariff were precisely the same as in the schedule filed March 25, 1915; the purpose and effect of the last schedule being simply to change the number of the schedule, the former schedule having been inadvertently marked as No. 1, whereas it should have been No. 2, as the previous schedule filed in 1907 had been. marked as No. 1.

11. For several years last past the defendant railway company has filed regularly with the Interstate Commerce Commission at Washington, D. C., the various reports required to be made by companies engaged in interstate transportation as required by the act of congress.

12. There is very little evidence as to the transportation of passengers over the line of the defendant company. In June, 1911, two emigrants bought tickets in Philadelphia for transportation to the village of Humbert and were carried over the B. & O. Railroad to Ursina, thence over the railroad of the defendant company to Humbert, and the B. & O. Railroad Company accounted to the defendant company for its share of the transportation charges. This is the only instance of the carrying of passengers over the line of the defendant company from or to points outside of the State of Pennsylvania. There was also evidence of a few shipments of through freight from points outside of the State of Pennsylvania to the village of Humbert, the same having been carried over the railroad of the defendant, but there was evidence of some shipments from Humbert to points outside of the State of Pennsylvania by shippers other than the plaintiff, and on the shipments from Humbert to points outside of Pennsylvania and from points outside of Pennsylvania to Humbert the defendant received its proportionate share of the through freight charges.

13. The defendant filed with the Public Service Commission of Pennsylvania at Harrisburg, its schedule of tariff rates, of which notice was given to the plaintiff. Neither the plaintiff company nor any other shipper filed a complaint with either the Interstate Commerce Com-

mission at Washington, D. C., or the Public Service Commission of Pennsylvania at Harrisburg, as to the schedule of rates filed by the defendant company.

14. The defendant maintains an office and has an agent in said office at its station at Humbert, but neither the defendant nor the B. & O. Railroad Company maintains a station or an agent at the junction of the two railroads near Ursina. The line of the defendant passes near the station of the B. & O. at Ursina, but does not connect until at a point some distance west of the station.

The court held as a matter of law that the shipments under the contract were governed by the provisions of the Interstate Commerce Act and accordingly dismissed the bill.

*Error assigned* was decree dismissing the bill.

*George D. Howell,* with him *Francis J. Kooser,* for appellants.—The lumber company asked the restraining influence of the local court, but that court we believe, took such a view of the principles involved as totally excluded from its consideration the attitude of this court and of the Supreme Court in the several cases of: Hoover v. Penna. R. R., 156 Pa. 220; Bald Eagle V. R. Co. v. Nittany Valley R. R. Co., 171 Pa. 284; Wright v. B. & O. R. R., 32 Pa. Superior Ct. 5; Clark Bros. Coal Mining Co. v. P. R. R., 241 Pa. 515; Pittsburgh & L. E. R. R. v. Colonial Steel Co., 251 Pa. 460; Mitchell Coal & Coke Co. v. Penna. R. R. Co., 241 Pa. 536.

*Chas. H. Ealy,* of *Uhl & Ealy,* with him *George R. Scull,* for appellee, cited: Texas & New Orleans R. R. Co. v. Sabine Tram Co., 227 U. S. 111; United States v. Union Stock Yard & Transit Co., 192 Fed. 330; Armour Packing Co., 209 U. S. 56; Louisville & Nashville R. R. Co. v. Mottley, 219 U. S. 467.

OPINION BY TREXLER, J., October 9, 1916:

In 1910 the United Lumber Company made a contract with the Ursina & North Fork Railway Company in which the latter agreed for a period of ten years, with the option of ten more, to transport the cars of the lumber company over its road to the junction point of the B. & O. Railroad, at a charge of $5 per loaded car. In 1915 the railway company filed with the Interstate Commerce Commission its tariff and rates in which the rate between the two points named in the contract was advanced about three times the amount per car.

The question before us is whether the lumber company can hold the railway company to its contract or whether the rate it has filed with the Interstate Commerce Commission governs. To determine this question we must of course ascertain whether the shipments made by the lumber company were interstate or intrastate.

Upon the facts as found by the court, we find that all the lumber was sold to the Palmer & Semans Lumber Company to be delivered to it at Ursina which was the junction point of the Ursina & North Fork Railway Company with the Baltimore & Ohio Railway Company. Representatives of the plaintiff, the United Lumber Company, made requisition upon the railway company for cars and indicated in said requisition the points to which said cars of lumber were destined. When a car was loaded the waybill showing its destination was attached to the car or the lumber company delivered to the agents of the railway company a waybill taken out in the name of the Palmer & Semans Lumber Company to be attached to the car at the junction point, upon which waybill the point of destination was designated. The railway company did not issue to the plaintiff company through bills-of-lading but transported the cars to the junction point of the B. & O. Railroad Company. On all the product of the lumber company the Palmer & Semans Lumber Company received a commission based upon the prices they received for the same. They were responsible for the

prices reported at the time the shipments were made, and under the contract between the parties, and as stated above, the lumber was delivered to them at the junction point of the B.&O. Railroad Company. The cars were not unloaded at the junction point but continued on their journey uninterrupted to the points of destination outside of Pennsylvania. When the lumber was loaded on the cars its destination was determined. Every one connected with the shipping knew it or could readily ascertain it. The cars were not held for resale at the junction point. The sale was made before the cars were loaded by the lumber company.

In determining whether this was interstate or intrastate commerce, the rule laid down is that the essential character of the commerce determines under which of the above cases it falls and the mere billing and form of contract is not governing: Chicago, Milwaukee & St. Paul R. R. Co. v. Iowa, 233 U. S. 334. When freight actually starts its course of transportation through and out of the State, it becomes a part of interstate commerce and the essential nature of the movement and not the form of the bill-of-lading determines the character of the commerce involved: Illinois Central R. R. Co. v. De-Fuentes, 236 U. S. 157. Considering all the circumstances of the case, we have come to the conclusion that the lower court was right in holding that the shipments in question came under the Interstate Commerce Act. The shipment of the cars by the lumber company and their journey to the places of destination formed a continuous movement which was not interrupted at the junction point of the B. & O. Railroad Company. Had the lumber been shipped to the Palmer & Semans Lumber Company and been held at the junction point and then forwarded to purchasers, the case might present a different phase, but as stated before, when the lumber was shipped its destination was certain, and the journey to its destination was not broken by any one. Both the United Lumber Company and the shipping company

knew and intended that the movement of the cars would finally end at a point oustide the State.   The facts disclosing a continuous journey which was not interrupted at the junction point give the shipment the character of an interstate transaction and therefore governed by the rates filed with the Interstate Commerce Commission. Had the lumber been shipped to the junction point and there reshipped by the United Lumber Company even in carload lots to such customers as they may have obtained for them, the continuity of the journey would have been destroyed: Chicago, Milwaukee & St. Paul R. R. Co. v. Iowa, 233 U. S. 334.

Judgment affirmed.