WILLIAM L. FISHER & another *vs.* WILLIAM MINOT, Master in Chancery.

Materials charged and shipped by a partnership in their usual course of business, to works of one partner, on the day of the failure of all the partners, are to be treated as the property of that partner, and not of the partnership, in marshalling their assets in insolvency, under St. 1838, c. 163, § 21.

PETITION in equity under *St.* 1838, *c.* 163, § 18. The arguments were made at March term 1856. The case is stated in the opinion.

*J. L. English,* for the petitioners, cited *St.* 1838, *c.* 163, § 21; *Swain* v. *Sheppard,* 1 M. & Rob. 223; *Cooper* v. *Smith,* 15 East, 103; *Wright* v. *Dannah,* 2 Campb. 203; *Woodbury* v. *Long,* 8 Pick. 543; *Kendall* v. *Samson,* 12 Verm. 515; *Sackett* v. *Lowell,* 32 Maine, 164; *May* v. *Gentry,* 4 Dev. & Bat. 117; *Tooke* v. *Hollingworth,* 5 T. R. 215; *Atkin* v. *Barwick,* 1 Stra. 165; *Bourne* v. *Cabot,* 3 Met. 305; *Martin* v. *Pewtress,* 4 Bur. 2477; *Shumway* v. *Rutter,* 7 Pick. 56; *Lanfear* v. *Sumner,* 17 Mass. 110; *Shurtleff* v. *Willard,* 19 Pick. 202.

*S. Bartlett & C. B. Goodrich,* for the assignees, were stopped by the court.

*E. R. Hoar,* for intervening creditors.

SHAW, C. J. This is a petition in the nature of an appeal from the decision of the master in chancery, disallowing the claim of the petitioners against the separate estate of Horace Gray. Various points were raised upon the case stated; but at

the argument all were waived except the one stated in the last paragraph of the agreed statement.

It appears by the agreed statement that Horace Gray alone was carrying on a separate business in the manufacture of iron at Pembroke in the State of Maine ; that about the time of the failure, November 20th 1847, the firm of Horace Gray & Co. shipped from Boston, in pursuance of a previous course of business, on board of Schooners Lucy and Yeso two cargoes of iron, which arrived at Pembroke, and were sold by the assignees as part of the estate of Horace Gray, and credited to the separate estate $3592.24. The same was charged in the books of Horace Gray & Co. to " Pro. Pemb. Iron Works," in the same manner as other pig iron and coal thus charged, which had previously been sent to said Pembroke Iron Works.

The claim is to require the assignees to reform their account by crediting this sum to the account of Horace Gray & Co. and not let it stand, as the assignees have placed it, to the credit of the separate estate of Horace Gray.

This claim is founded on the ground that at the time of the first publication these cargoes of iron, acknowledged to have been property of Horace Gray & Co. to near the time, had not been appropriated and set apart to the separate use of Horace Gray, but remained the property of the company.

It is plain that the course of business was for Horace Gray & Co. to purchase pig iron, as they could most advantageously ; and when sent to either of Mr. Gray's iron works, to charge it to iron works named, but in effect to him personally, using such names of his works as to enable him to know which establishment in particular they were sent to.

It being conceded that this iron was the property of the firm up to the day or nearly the day of failure, the question is, whether the acts then done were sufficient to constitute an actual appropriation, so as to transfer the property from the firm to the partner.

The same rules substantially must govern this case, which govern the sale of personal property. In the absence of a fraudulent purpose to affect the rights of third parties — and there is

no room for imputing any such purpose here — we think the evidence shows what would amount to a sale and delivery. It was actually put on board vessels either provided by Mr. Gray, or by his appointment, in pursuance of his order or that of his agent. An agreement for a sale and delivery to a carrier, either a common carrier or a carrier appointed by the purchaser, is a good delivery, and transfers the property. It was shipped on or before the 20th of November, charged on the 20th, and the day of first publication was the 25th. The court are of opinion, that this iron, whilst *in transitu* and on its arrival, was the separate property of Mr. Gray, and as such it was sold with the other property of the Pembroke Iron Works, and the proceeds carried to the credit of his separate estate. The claim therefore to have this credit transferred to the credit of the estate of Horace Gray & Co. was rightly rejected.

The only real question is, when, according to the course of business, did the specific property in the iron pass from Horace Gray & Co. to Horace Gray ? It is contended not till arrival at Pembroke. The word " shipped," in common maritime and mercantile usage, means " placed on board of a vessel for the purchaser or consignee, to be transported at his risk "; and such a delivery is a constructive delivery to the purchaser. It makes no difference that it was to be paid for by the proceeds of the sales at a future time. The charge was on the 20th. The shipment was on or before the 20th. If on that day, it preceded the shipment. " Shipment " means delivery on board. If done on the 20th, the natural inference is that it was in pursuance of arrangements previously made by the engagement of the vessel. " Shipped " implies a past fact, placed, separated, set apart; this is all that was necessary to make it the property of Horace Gray.

There is nothing to show that it was sent at the risk of Horace Gray & Co., or that they paid the freight or insurance. If they did, they charged it in the same account. So that it was not at the risk of the firm from the time of shipment.

*Decree affirmed.*