# GILBERT *v.* THE FIRST NATIONAL BANK OF TIPTON.

[No. 7,892. Filed April 4, 1913. Rehearing denied June 19, 1913.]

1. PLEADING.—*Set-off.—Sufficiency.*—In an action by a broker for commissions for the sale of certain canned goods, an answer by way of set-off alleging that plaintiff came into possession of a carload of canned goods belonging to defendant and sold the same for a certain sum, which he failed to pay over to defendant, and asking that such sum be set off against any amount found due plaintiff and for judgment for the excess, was sufficient as against a demurrer. p. 613.

2. ASSSIGNMENTS. — *Property Included. — Evidence. — Right of Broker to Proceeds of Sale in Payment of Commissions Due from Assignor.*—Where two canning factories were operated nominally as two companies, but by a single management, and to secure an indebtedness for money loaned in the name of the first company for the use of both factories an assignment of all the property of the first company, including all canned corn owned by it, was executed, and in an action subsequently brought by a broker against the assignee to recover commissions due from it, the evidence, though showing that the first company did not can corn, showed that the assignment was intended to transfer the property of both companies to defendant, a finding that the assignment included the corn canned by the second company was warranted, so that, as against the set-off of defendant, plaintiff was not entitled to retain the proceeds from the sale of a car of such corn in payment of commissions due to him from defendant's assignor. p. 613.

3. SALES.—*Delivery.*—Where personal property is sold for a valuable and fair consideration, the sale is complete between the parties without an actual delivery. p. 617.

4. SALES.—*Intent of Parties.—Rights of Creditors.*—A corporation, though indebted to a broker for commissions earned in selling its goods, may sell its property to a bank in satisfaction of

loans, and in the absence of a fraudulent intent such sale will stand notwithstanding it operates to the disadvantage of such broker in the collection of·such commissions.   p. 617.

5.  ESTOPPEL.—*Inconsistent Claims.* — *Set-off.* — *Evidence.*—Under evidence showing that plaintiff performed services for two canning factories, which, though under one management, were operated nominally as two companies, and that plaintiff's account ran against the first company, would warrant a conclusion that plaintiff was not in a position to assert a right to retain the proceeds of a car of corn, canned by the second company, in payment of commissions earned on sales made for the management of such factories, and at the same time deny defendant's right to the proceeds of such corn under an assignment made in the name of the first company on the theory that such assignment did not include the property of the second company.   p. 617.

6.  APPEAL.—*Review.*—*Presumptions.*—On appeal the presumptions are in favor of the trial court.   p. 618.

7.  ASSIGNMENTS.—*Evidence.*—*Admissibility.*—Where two factories were operated nominally as two companies, though by a single management, and the first company assigned its entire property, and under the evidence the conclusion that the assignment included the property of both companies was warranted, the admission in evidence of a subsequent assignment, incomplete on its face, and signed by the individual who managed both companies, and including property of the second company, was not erroneous.   p. 618.

From Tipton Circuit Court; *Leroy B. Nash,* Judge.

Action by Harry C. Gilbert against The First National Bank of Tipton, Indiana. From a judgment for defendant, the plaintiff appeals. *Affirmed.*

*Holtzman & Coleman* and *E. A. Mock,* for appellant.
*Edward Daniels* and *J. R. Coleman,* for appellee.

FELT, P. J.—This is a suit by appellant, to recover from appellee a commission for the sale of canned goods. The complaint is in one paragraph, which appellee answered by general denial and a seventh paragraph by way of set off, to which appellant demurred for insufficiency of facts. The demurrer was overruled and an exception reserved. The court found for appellee and rendered judgment against appellant, in the sum of $151.45. Appellant's motion for a new trial was overruled and this appeal taken.

Appellant assigns error in the overruling of said demurrer and the overruling of his motion for a new trial. The complaint avers in substance that appellant is a broker and had sold goods on commission for the Windfall Canning Company; that on August 20, 1909, appellee took over the business of said company and employed appellant to sell the product of said canning company and agreed to pay appellant a commission of three per cent on all sales made by him; that appellant made sales in pursuance of said employment and there is due him as commission therefor the sum of $960.94 which amount is unpaid. A bill of particulars showing the sales, was filed with and made a part of the complaint. The seventh paragraph of answer

1. alleges in substance that appellant came into possession of one carload of sweet corn consisting of 995 cases of cans each belonging to appellee; that he sold the same for $1,200 and appellee was entitled to the money; that appellant failed to pay the same or any part thereof to appellee; that the amount is due and unpaid. Prayer that said sum be set off against any amount found due appellant and that appellee have judgment for the excess due it from appellant on account thereof. The seventh paragraph of answer states facts sufficient to constitute a good answer of set-off and the court did not err in overruling the demurrer thereto.

A new trial was asked on the ground that the assessment of the amount of recovery was erroneous, being too large; that the decision of the court is contrary to law and is not sustained by sufficient evidence; error in the admission of certain evidence.

It is not disputed that appellant earned the com-

2. mission for which he sues, but appellee contends that it was entitled to the proceeds from the sale of the car of corn as set out in its seventh paragraph of answer; that appellant was paid by retaining the proceeds of said sale and owes the appellee the difference between the amount

so received and the commissions due him. The finding of the court was in accordance with the contention of the appellee, so that the real controversy between the parties is to be determined by the answer to the question whether appellee was entitled to the proceeds from the sale of the car of canned corn. Appellant contends and it is not disputed that the Windfall Canning Company owed him between eleven and twelve hundred dollars for commissions earned before the transaction in controversy took place. Appellant further contends that the carload of corn sold by him was not included in the assignment of property made by the Windfall Canning Company to the appellee and asserts that the same belonged to the Warsaw Canning Company. Appellant in his brief states: "The undisputed facts in this case are that William A. Bowlin was the owner of both the Windfall Canning factory and the Warsaw Canning factory." It also appears that the business of said companies was under one management; that Bowlin procured money from appellee which he used in the operation of both of said plants; that he became indebted to the appellee and on June 19, 1909, executed an instrument which read as follows:

"State of Indiana, County of Tipton, SS: The Windfall Canning Company hereby bargains and sells to the First National Bank of Tipton, Indiana, the following described property, to-wit: All of the personal property of all kinds and character belonging to said Windfall Canning Company, said personal property consisting of all packages, canned goods, boxes, barrels, cans, caps, vegetables, fruits, pulp, corn and stock manufactured or in process of manufacture, and all materials used in the business of said Company owned or held by it in trust or on commission or sold but not removed, or in cars on the sidetracks adjacent to said Canning Company property, situate in the town of Windfall City, Indiana, and all of said kinds of property above described of said Canning Company may become in possession of during the year, 1909. Said Bill of Sale is hereby made in payment of $27,500 indebtedness shown due and owing by said Windfall Can-

ning Company to the said First National Bank.   Witness our hands and seals this 19th day of June, 1909.
The Windfall Canning Company.   By W. A. Bowlin, President.   (Seal) ''

Bowlin continued to manage the business of said company for appellee, and was required to turn over to it all the proceeds of the sales of goods.   On August 19, 1909, one John S. Mitchell was by the appellee placed in charge of the business of said company and on August 30, 1909, at the suggestion of said Mitchell, said Bowlin executed another instrument as follows:

"Windfall, Indiana.
For value received, I hereby assign all my rights, title and interest in the canned goods owned by me consisting of about nine hundred cases of peas stored at the Warsaw Canning Factory, Warsaw, Indiana, and nine hundred and ninety five cases of corn stored at the Coburn Warehouse, Indianapolis, Indiana, shipped from Cleveland, Ohio.   Said assignment of canned goods to be handled in the same manner as the canned goods now on hand at the Windfall Canning Company. W. A. Bowlin."

It is not disputed that the carload of corn was packed by the Warsaw Canning Company and that the Windfall factory did not can corn and was not equipped for so doing. It is asserted by appellant that the appellee has no claim to the car of corn except that given by the instrument of date August 30, 1909; that the instrument is incomplete and defective in form and was not delivered to appellee by Bowlin, but was held by said Mitchell; that the car of corn was sold prior to August 30, and the proceeds rightfully applied by him to the payment of the indebtedness due him from said Windfall Canning Company.   The car of corn was shipped to Cleveland, Ohio, prior to June 19, 1909, and was rejected and from there was shipped to the Coburn Warehouse, Indianapolis, Indiana, where it arrived prior to August 20, 1909.   On August 23, appellant wrote to the Windfall Canning Company reporting the condition of the

corn and recommending that it be sold at a reduced price if necessary to make a quick sale and in the letter said: "Please let me hear from you on this." On the same day he wrote the Windfall company for an order to enable him to obtain a release of the car so he could make delivery of corn sold from it to customers. It also appeared that appellant credited the account of the Windfall company on September 2, with $73.88 and on Sept. 8, with $1,068.18, but he claimed the sales were made at an earlier date; that all the business with appellant was done in the name of, and through, the Windfall Canning Company. There was evidence other than the written instruments tending to prove that the bill of sale of June 19, was intended to transfer to appellee all the goods and wares of the Windfall Canning Company or of the Warsaw Canning Company; there was also evidence tending to prove that the corn was shipped from Cleveland to Indianapolis, at the direction of appellee through Mr. Bowlin and that the appellee was to receive the proceeds from its sale in pursuance of the transfer of property previously made. On the facts of this case, we think the court was warranted in holding that the legal effect of the instrument of June 19 was to transfer to appellee the car of corn in question as of that date. The car was then at Cleveland, Ohio, and was later shipped to Indianapolis for sale. No corn was canned at the Windfall plant, but the bill of sale expressly includes corn. The terms of the instrument evidence an absolute and unconditional sale of the goods and wares of the Windfall Canning Company to appellee in payment of a debt of $27,500. The evidence also tends to show that the Warsaw company was only a branch of the Windfall company; that Bowlin obtained credit from appellee for the Windfall Canning Company and used the money in the operation of both plants. He seems to have been the controlling factor in all the busi-ness of both concerns, but the evidence is not clear or defi-

nite as to the nature of the concern known as the Warsaw Canning Company, or as to its business transactions.

3. Where personal property is sold for a valuable and fair consideration, the sale is complete between the parties without an actual delivery. *Warner* v. *Warner* (1903), 30 Ind. App. 578, 582, 66 N. E. 760; *Teague* v. *Abbott* (1912), 51 Ind. App. 604, 100 N. E. 27; 6 Cyc. 990, *et seq.*

4. Since there is no claim of fraudulent intent the Windfall company could make such sale, though it may have had the effect of putting appellant to a disadvantage in the collection of his claim for commissions already earned. *Owens* v. *Gascho* (1900), 154 Ind. 225, 228, 56 N. E. 224; *South Branch Lumber Co.* v. *Stearns* (1891), 2 Ind. App. 7, 11, 28 N. E. 117.

5. There was evidence from which the court could find that appellee was the owner of all the property covered by the first bill of sale from the date of the instrument, and appellant is not thereby placed in any worse situation than he would have been had the goods been sold at Cleveland as originally intended, and the proceeds remitted to the owner. After the execution of said bill of sale Bowlin was to turn into the bank all proceeds from the sale of goods. He was continued as manager until August 19, 1909, when he was succeeded by Mr. Mitchell by the appointment of appellee. Appellant about August 20, 1909, made a new arrangement with appellee to continue as agent or broker for the sale of the canned goods controlled by it, and there is other evidence tending to prove that he knew of the assignment to appellee and of its claim to the proceeds of all sales prior to that date. His account was against the Windfall Canning Company and both he and appellee are claiming the proceeds from the sale of the car of corn and asking that it be applied on indebtedness against that company. Both parties are therefore in the same situa-

tion in claiming that the funds derived from the sale of the corn should be applied to the payment of the debts of the Windfall company.    But this position is inconsistent with appellant's contention that the bill of sale by the Windfall company did not transfer to appellee the car of corn.    The court may have concluded from the evidence that appellant was not in a position to deny the transfer to appellee, or that the Warsaw company, notwithstanding it used a different name was in fact only a branch of the Windfall company and did not have such title to its products as to prevent the bill of sale by the Windfall company from transferring to appellee the car of corn in controversy.    The evidence as to the names of the concerns, the ownership of the property, the business methods and Bowlin's interest in and control of the concerns is confusing and gives a wide range for inferences to be drawn from the evidence.

6.    The presumption is in favor of the trial court.    From the record we cannot say its judgment is not sustained by the evidence.    Our view of the effect of the bill of sale of June 19, makes the execution of the instru-

7.    ment of August 30, unimportant.    However, we think there was no error in receiving it in evidence and considering it along with the other facts of the case.

There is no available error shown by the record.

Judgment affirmed.

Note.—Reported in 101 N. E. 395.    See, also, under (1) 31 Cyc. 226; (2) 4 Cyc. 67; (3) 35 Cyc. 302; (4) 20 Cyc. 572; (5) 16 Cyc. 785; (6) 3 Cyc. 310; (7) 4 Cyc. 111.    As to the scope and office of a counterclaim under the code, see note to *Woodruff* v. *Garner* (Ind.), 89 Am. Dec. 482.    As to acceptance and delivery of goods which will satisfy the law of sales, see 49 Am. Dec. 325; 37 Am. Rep. 16; 96 Am. St. 215.