## HORNER ET AL. v. DAILY.

[No. 11,099.   Filed January 13, 1922.]

1. SALES. — *Consummation.* — *Title.* — *Written Confirmation.* — Where an offer for the sale of a car load of wheat was made and accepted over the telephone, and the buyer subsequently wrote the seller, "We are pleased to confirm the purchase from you of one car of No. 2 red wheat," at a named price, "for shipment today," pursuant to seller's request over the telephone for written instructions, the sale was consummated over the telephone and not by the letter, and the wheat became the property of the buyer when the contract was concluded over the telephone, although remaining in the seller's possession, "to confirm" the purchase meaning that it had theretofore been made, and the letter was simply a written memorandum thereof, with instructions as to shipment. p. 381.

2. SALES.—*Instructions for Shipment.—Compliance by Seller.— Delivery to Carrier.*—A seller of wheat complied with purchaser's written instruction "for shipment today" by delivery to the carrier for transportation on that day, though the car was not moved until several days thereafter, the seller's obligation being satisfied by the act of delivery. p. 383.

3. APPEAL.—*Questions Reviewable.—Excessive Damages.—Failure to Assign as Ground for New Trial.*—In an action to recover damages for the buyer's failure to accept and pay for a car load of wheat, where the seller contracted to sell wheat of a stipulated grade, but actually delivered an inferior grade, in which case it was the trade custom to apply the wheat delivered on the contract at the market price, the buyer's contention that the court erred in giving the seller a judgment without making any allowance for the difference in the market price of the two grades, and that the burden was on the seller to show such difference, is one having reference only to the amount of damages, and will not be considered on appeal, where excessive damages was not assigned as a ground for new trial. p. 383.

4. EVIDENCE.—*Admissions.—Sufficiency to Sustain Judgment.— Judicial Notice.—Court Records.*—Where an action was originally brought against a named company as a corporation, but an amended complaint was subsequently filed against individuals as partners doing business under the name of such company, the admission of a garnishee defendant of indebtedness to the company made prior to the filing of the amended complaint, and the partner's admission that they were partners

doing business under such firm name, *held* sufficient to sustain the judgment rendered against the garnishee, the court having the right to take judicial notice of its record showing the indebtedness of the garnishee to such company, which was identified by the evidence to be the defendant's partnership business. p. 384.

From Daviess Circuit Court; *James W. Ogdon,* Judge.

Action by George Daily against Zed D. Horner and Fred G. Horner, partners doing business under the name of the Horner Elevator and Mill Company, and another. From a judgment for plaintiff, the defendants appeal. *Affirmed.*

*McGaughey, Tohill & McGaughey* and *Alvin Padgett,* for appellants.

*M. S. Hastings, J. G. Allen, E. E. Hastings* and *A. W. Allen,* for appellee.

NICHOLS, J.—This is an action originally brought by appellee against Horner Elevator and Mill Company and by amended complaint against appellants to recover damages sustained by appellee by reason of the failure on the part of appellants Horner and Horner to accept and pay for a carload of wheat sold by appellee to them, on July 16, 1920, which sale was evidenced by the following memorandum, omitting formal parts:

"July 16, 1920.
"We are pleased to confirm purchase from you of one car No. 2 red wheat at $2.82 per bu. f. o. b. your track, for shipment today, destination weights and grades to govern.

"Kindly bill this car to your order at Baltimore, Md. notify J. T. Fahey & Co., and place notations on B/L that wheat is for export and that inspection is permitted.

"You may make draft on us at Lawrenceville, with B/L attached.

Yours truly,
HORNER ELEVATOR & MILL COMPANY."

Appellant Spink Milling Company was named as garnishee and filed its answer admitting indebtedness to the Horner Elevator and Mill Company in the sum of $973.

Issues were joined upon the amended complaint, the cause was submitted to the court for trial, and judgment was rendered against the appellants Horner and Horner for $490, and judgment in like amount was rendered against appellant Spink Milling Company, as garnishee.

Appellants assign as error, in this court the overruling of their motion for a new trial which was for the reasons that: (1) The decision of the court is not sustained by sufficient evidence, and (2) the decision of the court is contrary to law.

It appears by the evidence that on July 16, 1920, appellee loaded at Montgomery, Indiana, the car of wheat involved which was located on the Baltimore and Ohio Southwestern Railroad, which car had been placed in front of appellee's warehouse for that purpose. When such car was loaded ready for shipment, which was between the hours of nine and eleven o'clock a.m. July 16, 1920, appellee called appellants over the telephone and told them that he had the car loaded ready for shipment, and asked that they make a bid thereon, and that they did so make a bid of $2.82 per bushel on track at Montgomery, which bid at the time was accepted, and appellee requested shipping instructions; but he could not understand appellants over the phone, and he asked them to write, giving instructions, which they promised to do by mail that day. Appellee testifies that nothing was said with reference to shipping on that day or about premium to be paid for early shipment. Appellants wrote the letter to appellee and mailed it in time for the one o'clock train out of Lawrenceville, Illinois, where appellants were located, which letter is set out above. This letter was not received until the morning

of the seventeenth, but about 9:30 p.m. of July 16, 1920, appellee met Fred G. Horner, one of appellants, in Vincennes from whom he received billing instructions at that time. Said appellant testified that when appellee informed him at Vincennes that the billing instructions had not been received, he then stated to appellee that the car was bought for shipment that day, that appellee asked him if it would be all right to ship it the next day, that said appellant stated that it would if he shipped it early the next morning, and that he agreed so to do; but appellee testified that this conversation did not occur. On the morning of the seventeenth, appellee received the letter aforesaid and about 7:30 of that morning went to the railroad agent and asked for a bill of lading for the car, giving the instructions that had been given to him as to shipping the same. The agent then notified appellee that it could not be shipped that day, because it was necessary to obtain a permit for wheat which was being conveyed to Baltimore. The bill of lading was prepared, but not delivered until on July 19, 1920, when said agent received the permit to move the car, at which time, upon delivery of the bill of lading, appellee drew upon appellants for the sale price of the car of wheat. On the morning of the seventeenth, when application was made for the bill of lading, appellee's padlock with which he had locked the car was removed and the agent of the railroad company sealed the car. Appellee did nothing further with the car except to receive the bill of lading therefor on the nineteenth, when the agent had obtained permission to move the same.

That the sale was consummated over the telephone is evidenced by appellants' acknowledgement in the letter of instructions to appellee, wherein they say they are pleased to confirm the purchase. "To confirm" as here used is defined by Webster's Dic-

tionary as follows: "To give new assurance of the truth of, to render certain, to verify, to corroborate," and to confirm the purchase must of necessity mean that the purchase had theretofore been made, and the letter was simply a written memorandum thereof confirming the same, with instructions as to the method of shipment. It is observed that it is stated in the memorandum that the sale was for shipment on that day, but appellee testifies that there was nothing said in the telephone conversation on July 16, about the time of shipment. It clearly appears from the evidence, however, that the car was at the time of the telephone conversation then loaded and ready to be moved so far as appellee was concerned, and it was apparent that appellee could not give shipping instructions to the railroad company until he had received the same from appellants, and that as soon as he did receive such instructions he immediately communicated the same to the agent of the railroad company. It is held that in a case of bargain and sale, the goods which are the subject of the contract become the property of the buyer as soon as the contract is concluded, whether the goods are then delivered to him or remain in the possession of the seller. *Henline* v. *Hall* (1853), 4 Ind. 189; *Leffler* v. *Watson* (1895), 13 Ind. App. 176, 40 N. E. 1107, 41 N. E. 467; *Gilbert* v. *First Nat. Bank* (1913), 53 Ind. App. 611, 101 N. E. 395.

In the last case cited the court holds that the sale was none the less such because the seller agreed to care for the property. So in the instant case the seller agreed to care for the property in that he would see that it was shipped according to instructions received from the purchaser, and this he did at the earliest opportunity upon receiving shipping instructions. Appellant Fred G. Horner admits that he extended the time for shipment to the morning of July 17, 1920, though this is denied

by appellee. This is, however, immaterial so far as the result of this action is concerned, for it clearly appears that appellee shipped the car of wheat as soon as instructions were received.

It is true that the railroad company did not move the car until the nineteenth, and appellants say, that therefore the car was not shipped until the nineteenth, 2. but appellants fail to comprehend the meaning of the word shipped, as used under the circumstances of this case. The word as here used expresses the idea of goods, in this case a car of wheat, delivered to the carrier for the purpose of being transported from one place to another, and implies a completed act irrespective of the time of transportation. *Caulkins* v. *Hellman* (1872), 47 N. Y. 449, 7 Am. Rep. 461; *Fisher* v. *Minot* (1857), 76 Mass. (10 Gray) 260; *Schmertz* v. *Dwyer* (1866), 53 Pa. (3 P. F. Smith) 335; *State* v. *Carson* (1910), 147 Iowa 561, 126 N. W. 698, 140 Am. St. 330; *L. & L. F. Ins. Co.* v. *R. W. & O. R. Co.* (1894), 144 N. Y. 200, 39 N. E. 79, 43 Am. St. 752; 10 C. J. 225; *Clark* v. *Lindsay & Co.* (1896), 19 Mont. 1, 47 Pac. 102, 61 Am. St. 479.

The last case cited is very much like the instant case, and it was there held that when the seller agreed to ship upon a certain date, presumably he meant only to deliver on that date to the carrier for transportation on a regular line of transportation, and that there was no implied obligation to see that the merchandise left on that date.

It appears from the evidence that the car load of wheat involved graded No. 3 instead of No. 2, and appellants contend that the court erred in giving 3. judgment in favor of appellee and against them for the difference between the net amount received for the carload of No. 3 wheat and the amount which would be produced by a like quantity of No. 2

wheat at the contract price, without making any allowance for the market difference between the Nos. 2 and 3 wheat on the date of the sale of the same in the Baltimore market. Appellants say that appellee having contracted to sell No. 2 wheat and then tendered No. 3 wheat, it was incumbent on him to show by proper testimony the market difference between Nos. 2 and 3 wheat in the market where and on the day when the same was sold. It seems to be conceded that by custom wheat bought on the basis of No. 2 which grades No. 3 may be applied on the contract at the market difference. Appellants' witness Hayes, and appellant Fred G. Horner, testified that where wheat is bought on a No. 2 basis and grades less, it can be applied on the contract at the market difference; so that the only question that is presented by appellants' contention with reference to the burden being upon appellee to show the market difference is one of the amount of damages. But appellants have not assigned as a reason for a new trial that the damages were excessive and the question is therefore not before us.

Finally, appellants contend that there is no evidence to show an indebtedness of appellant Spink Milling Company, as garnishee, to the Horner Elevator and Mill Company or to Zed D. Horner, or Fred G. Horner. Appellants say that appellee introduced no evidence to sustain a judgment against said Spink Milling Company and that therefore the judgment against the garnishee is not sustained by sufficient evidence. It appears, however, by the record of the trial court that appellants Spink Milling Company filed its answer "admitting indebtedness to the defendant Horner Elevator and Mill Company in the sum of $937.00." Appellants admitted that they were partners doing business under the name of the Horner Elevator and Mill Company, and appellant Fred G. Horner so testified.

At the time, judgment was rendered against said Spink Milling Company as garnishee, this evidence was before the court, and the court could take judicial notice of its own record in the case which showed the indebtedness of the said Spink Milling Company to said Horner Elevator and Mill Company. We hold that such judgment against the garnishee was sustained by sufficient evidence. The fact that at the time of such admission by the Spink Milling Company, the original complaint alleged that such Horner Elevator and Mill Company was a corporation, and that thereafter an amended complaint was filed, making appellants parties defendant as partners doing business under the firm name of Horner Elevator and Mill Company, can make no difference, as the alleged corporation is by the evidence clearly identified as being the same as the partnership mentioned in the amended complaint.

We find no reversible error. The judgment is affirmed.