**J. I. CASE THRESHING MACH. CO. v. BUICK MOTOR CO.**

No. 8696.

Circuit Court of Appeals, Eighth Circuit.

March 11, 1930.

Oscar D. McCollum and Milton Schwind, both of Kansas City, Mo. (McCollum & Schwind, of Kansas City, Mo., on the brief), for appellant.

John G. Madden, of Kansas City, Mo. (James E. Nugent, T. J. Madden, Harry R. Freeman, Morrison, Nugent, Wylder & Berger, and Madden, Freeman & Madden, all of Kansas City, Mo., on the brief), for appellee.

Before STONE and BOOTH, Circuit Judges.

BOOTH, Circuit Judge.

This is an appeal by the J. I. Case Threshing Machine Company, defendant below, from a judgment against it in an action brought by appellee on account of personal injury sustained by an employee of appellee. The action was brought pursuant to the provisions of section 11 of the Workmen's Compensation Act of Missouri (section 13672a 10, 1927 Suppl. Mo. Rev. Stat. 1919), which reads as follows:

"Where a third person is liable to the employee or to the dependents, for the injury or death, the employer shall be subrogated to the right of the employee or to the dependents against such third person, and the recovery by such employer shall not be limited to the amount payable as compensation

to such employee or dependents, but such employer may recover any amount which such employee or his dependents would have been entitled to recover. Any recovery by the employer against such third person, in excess of the compensation paid by the employer, after deducting the expenses of making such recovery shall be paid forthwith to the employee or to the dependents, and shall be treated as an advance payment by the employer, on account of any future installments of compensation."

 Among the facts out of which the action grew, the following are undisputed: Appellant was the owner of a large warehouse near the corner of Eleventh and Santa Fé streets in Kansas City, Mo. In April, 1926, appellant leased to appellee two floors in said building by written lease. This lease was canceled in the fall of 1926. In January, 1927, the parties entered into a new lease agreement covering the first floor of the building, and with the option to appellee of renting other floors. This option was exercised, and on June 21, 1927, appellee was lessee of all of the floors of the building. The floors were used by appellee for the storage of its automobiles.

In the building, and located in a shaft, was a large freight elevator, which appellee used. In front of the elevator openings at the several floors, gates were located. The gate at the first floor was so arranged that it could be made to slide up and down in guideways at the sides of the gate. A rope, attached to the gate, and passing over a pulley, had a weight attached at its other end. This arrangement allowed the gate to be raised and lowered easily, and caused it to remain in any position placed. The gate was not automatic.

On June 21, 1927, and for some time prior thereto, Jewel C. Hale was an employee of appellee. On that day he and several other employees went to the warehouse to move some of the stored automobiles. In the course of the work it became necessary for Hale to use the elevator. He went to it, but the place being somewhat dark, he was unable to see whether the elevator was standing at the main floor. He took hold of the guide at one side of the elevator, and reached into the shaft a few inches with his right foot to find the floor of the elevator. While he was doing this the guide gave way, according to his testimony, and he was precipitated to the bottom of the elevator shaft, receiving severe injuries.

It was the claim of appellee that the elevator was at all times under the control

of the appellant; that appellant had agreed to maintain and keep it in repair; that it was the appellant's duty to provide the elevator with an automatic gate as provided by one of the ordinances of the city; that it was negligent in not so doing, and in not keeping the gate and its guides in safe condition.

It was the contention of appellant that it was not in control of the elevator; that it had not agreed to maintain it and keep it in repair; that there was no negligence on its part, but that Hale was guilty of negligence which caused the accident; that even if there was an implied agreement to maintain the elevator when the first floor was rented, yet, when all the floors became rented to appellee, the control of the elevator passed to it with the duty to maintain and repair.

On these issues the case was tried to the court and a jury, and resulted in a verdict and judgment in favor of appellee. The present appeal followed.

At the outset we are met by a motion by appellee to dismiss the appeal for failure on the part of appellant to observe Rules 11 and 24 of this court.

It is apparent that there is a non-observance by appellant of the rules mentioned, in several particulars. While we do not think the situation calls for a dismissal of the appeal, yet, because of such non-observance, we shall not undertake to discuss all of the assignments of error, but shall confine ourselves to a discussion of such questions as are, in our opinion, clearly raised despite such non-observance of the rules. The motion to dismiss the appeal is denied.

We turn to the merits. It is apparent that one of the vital issues in the case was: Whose duty was it to maintain the elevator and keep it in safe condition?

Appellee offered testimony tending to show that the parties had entered into an oral agreement relative to the leasing of the floors of the warehouse, and that in the oral agreement was a promise by appellant to maintain and repair the elevator. Appellee also introduced in evidence two letters which it claimed were merely confirmatory of the oral agreement, so far as they went. The letters were as follows:

"Jan. 5th, 1927.

"(For Mr. McInturff)

"J. I. Case Threshing Machine Co., 2117–33 Broadway, City—Dear Sirs: Confirming our verbal agreement with your Mr. Chadwick a few days ago and our 'phone con-

versation with your Mr. McInturff of even date, we attach hereto our check in the amount of $50.00 payable to your order for rent of the first floor of the building at 1000 Santa Fé Street to February 5th, 1927.

"It is understood and agreed that this is a monthly rental proposition and the rent is payable thirty days in advance. Should we desire to cancel the agreement at any time, it will only be necessary to notify you ten days before the expiration of the rent already paid.

"It is further understood from the conversation with Mr. Chadwick, that should we desire another floor requiring the use of the elevator, we will pay $75.00 per month for such floor, but any additional floors will be $50.00 per month.

"Please acknowledge receipt of this check and verify the agreement as outlined in the foregoing.

"Yours truly,
"Buick Motor Company,
"By ——————."

"Kansas City, Mo., Jan. 11, 1927.

"Buick Motor Company, Admiral & McGee Street, Kansas City, Missouri—Gentlemen: We received your letter of January 5 enclosing check for rent of the first floor of our building at Tenth and Santa Fé, up to and including February 5, 1927. This is understood by us in accordance with your letter of January 5.

"In the event you find you are going to be in need of additional space, we should be glad to have you notify us in advance. We may be negotiating with others at an early date.

"Yours truly,
"J. I. Case T. M. Company,
"E. C. Chadwick, Branch Manager."

Appellant contended that these letters constituted the contract between the parties and contained all the terms thereof; and it has assigned as error the refusal of the court to charge that the letters constituted the contract and the whole contract between the parties. The appellant also objected to the oral testimony relative to the agreement, on the ground that such oral testimony varied the terms of the written contract contained in the letters; and it has assigned as error the admission of such testimony.

The elementary rule of evidence thus invoked is unquestioned, but, of course, has no application unless there was a written contract, which on its face was complete in itself and so intended by the parties. The intention is to be gathered from the writing itself, considered in the light of surrounding circumstances; and where the writing on its face thus considered shows that it was not intended to be the contract between the parties, as where it refers to the real agreement, or where it does not purport to be complete in itself, parol evidence may be resorted to for the purpose of showing the terms of the real agreement.

22 Corpus Juris, p. 1132, § 1512, states the rule thus: " * . * * Where a letter does not purport to be a complete contract, but on its face professes to be merely a recitation and confirmation of an oral agreement, such oral agreement, and not the letter, constitutes the real contract between the parties, and such contract may be shown by parol." Again (page 1283, § 1715): "Where a written instrument, executed pursuant to a prior verbal agreement or negotiation, does not express the entire agreement or understanding of the parties, the parol evidence rule does not apply to prevent the introduction of extrinsic evidence with reference to the matters not provided for in the writing, and under such circumstances it is not necessary that there should be any allegations of fraud, accident, or mistake in order to render parol evidence as to the real contract between the parties admissible." Again (page 1290, § 1717): " * * * While the writing itself is the only criterion by which the intention of the parties is to be ascertained, yet it is not necessary that the incompleteness thereof should appear on its face from a mere inspection of it, for it is to be construed in the light of its subject matter and the circumstances under which and the purposes for which it was executed." See also 3 Encyc. of Evidence, pp. 512, 519.

Wigmore on Evidence (2d Ed.) vol. 5, § 2429, states the rule thus: "The mere circumstance that some writing has been made by parties, for the better recollection of the terms of their transaction, does not of itself make that writing the sole memorial of the transaction, even to the extent covered by the writing. There may have been no integration at all, in spite of the written notes; i. e., no attempt to make the writing embody the transaction or any part of it, but merely to furnish an aid to the writer's recollection or a written admission for the other party's satisfaction."

The rules thus stated have been recognized by the courts in many cases.

In Silverthorne v. McFarland (C. C. A.) 266 F. 60, 62, the court said: " * * *

Where the parties to a contract have not put all its provisions into writing, evidence of a separate oral agreement is admissible as to terms or conditions, not inconsistent with those expressed, on which the document is silent, especially where, as here, the court may infer from the circumstances of the case that the parties did not intend the writing to show the entire undertaking."

In Harding v. Taubel (C. C. A.) 1 F. (2d) 614, 617, the court said: "The rule against the admission of parol evidence to vary written instruments does not apply 'to cases where the original contract was verbal and entire, and a part only of it was reduced to writing.' * * * The letter or order itself refers to extrinsic matter, parts of the contract, not included in the order, and parol evidence is admissible to explain the missing parts thus referred to. * * * Therefore it was not erroneous to admit the evidence to show exactly what the contract was."

In Ohio Crane Co. v. Hicks, 110 Ohio St. 168, 171, 143 N. E. 388, 389, the court said: "The parol evidence was admissible in this case for several reasons: (1) Because the written contract expressly refers to a verbal contract, and thereby excludes the theory of the merger of the oral agreement into the written agreement."

In Ehrlich v. United, etc., Co., 252 Mass. 12, 15, 16, 147 N. E. 20, the court said: "The defendant contended that the confirmation constituted a written contract; that under the parol evidence rule oral evidence, though admitted without objection, could not be considered to vary the meaning of the words 'Composition chips' * * *. It is true that the confirmation contains all the essentials of a contract (North Packing & Provision Co. v. Lynch, 196 Mass. 204, 81 N. E. 891), but the conduct of the signers shows that they regarded it as a memorandum only. * * * The confirmation was introduced as a memorandum to be considered with other evidence in deciding what the obligations of the parties really were."

In Anchor Sawmills Co. v. Shambow Shuttle Co. (R. I.) 132 A. 1, 2, the court said: "The letter above mentioned makes no mention of the amount or the proportions of the various blocks to be purchased. As the writing does not contain the entire terms of the agreement, evidence of the statements of the parties and their conduct must be resorted to to determine the actual agreement."

In Ruggles v. Swanwick, 6 Minn. 526, 534 (Gil. 365) the court said: "Where there is a direct reference in a writing to a verbal agreement, the latter may be proved, even though the effect of it be to add material terms and conditions to the writing."

In Lichtenstein v. Rabolinsky, 75 App. Div. 66, 77 N. Y. S. 792, 793, the court said:

"After the parties had made their verbal contract, two letters passed between them. The first was written by the defendant upon the day the contract was made, and read as follows: 'We acknowledge sale to you this day of one car busheling, for thirteen ($13.00) dollars per net ton, and shall be glad to have your confirmation of your said purchase. Delivery at once.'

"The other letter was written the following day by the plaintiff, and read as follows: 'This confirms purchase made Jan. 15th, 1900, by Mr. M. Lichtenstein of Mr. Harry Rabolinsky of one car load of busheling scrap at $13.00 net ton, delivered on cars. Hoping this is satisfactory, we remain,' etc. * * *

"We reach the conclusion that the letters in question were not intended to, and did not, constitute a complete written contract, fixing and governing the rights of the parties. We think it appears upon their face that they were written, rather, for the purpose of merely evidencing and confirming the terms of a prior completed parol contract. It would be perfectly proper for parties who had made a parol contract to give some written memorandum which should be evidence that it had been made, and of its terms, and which memorandum still should not take the place, as a written contract, of the one which had been made by parol. We think it was the intention of the parties thus to do."

See also Alderman Bros. Co. v. Westinghouse, etc., Co., 92 Conn. 419, 103 A. 267; Horner v. Daily, 77 Ind. App. 378, 133 N. E. 585; Thurston v. Lubrite Ref. Co., 120 Kan. 137, 242 P. 126; Farmers' Handy Wagon Co. v. Askegaard, 143 Minn. 13, 172 N. W. 881; Garrison v. Salkind, 285 Pa. 265, 132 A. 125; Martin v. Hemphill (Tex. Com. App.) 237 S. W. 550, 20 A. L. R. 984.

Turning to the facts in the case at bar, it is to be noted that the letters of January 5 and January 11, 1927, were not in the form of a contract. The letter of January 5, 1927, from plaintiff to defendant, was not in the nature of an offer to rent, but it proceeds on the assumption that a rental agreement has already been entered into by the parties. The letter specifically refers to such an agreement. It says, "Confirming our verbal agreement." The letter of January 11, 1927, from defendant, proceeds on the

same assumption. It is to be further noted that the two letters do not make a complete contract. There is no sufficient description of the property leased. It is to be still further noted that the letters disclose the possibility that plaintiff might in the future desire another floor or floors requiring the use of the elevator; and also disclose the possibility that defendant might rent floors to other tenants, who would need to use the elevator. These two contemplated possibilities make it apparent that at least one important matter—indispensable to the carrying out of the contract—was not included in the letters, viz., the control and maintenance of the elevator. As to this essential matter the letters did not purport to be a complete contract.

The evidence shows that under a former lease the defendant had maintained the elevator; and that defendant expected under the present lease to allow other tenants, if any, to use the elevator; and also expected to make any repairs on the elevator that became necessary. The evidence also shows that during the term of the lease in question defendant actually made repairs from time to time, and that plaintiff never made repairs.

In view of all these facts and circumstances, we are of opinion that the letters above mentioned did not constitute the contract between the parties, and were not intended so to do; that the contract was in parol and the letters were merely confirmatory memoranda as to certain provisions thereof.

This disposes of the assignments of error touching the introduction of oral testimony as to terms of the contract, and also the assignments of error relative to the charge of the court touching the same matter.

With the oral evidence thus properly admitted, there was ample support for the finding of the jury that defendant had agreed to maintain and repair the elevator, and that there had been no change in the agreement in respect to this matter.

The appellant's contention that when appellee became the tenant of all the floors, it then became liable for the maintenance of the elevator, cannot be sustained, in view of the finding that there was an express agreement covering the matter.

Appellant also challenges the charge of the court in regard to the effect of violation of the ordinance of the city of Kansas City requiring automatic gates for elevators. The court in its charge to the jury at first stated that violation of the ordinance constituted negligence per se. Later it withdrew this statement and charged that failure to observe the statute would be a fact to be considered with other facts in determining whether defendant was negligent. If the first statement was incorrect, defendant has no ground for complaint, since the error, if there was one, was corrected. If however, the first statement was correct, and the latter incorrect, defendant still has no ground for complaint, since it was unduly favored by the latter statement.

The question whether the alleged violation of the ordinance was the proximate cause of the accident and the injury was properly and correctly submitted to the jury; as was also the question of contributory negligence on the part of Hale.

We find no reversible error in the record, and the judgment is accordingly affirmed.