OVERTON, J.
 

 This is an appeal from a judgment sustaining the prescription of two years, enacted by the Legislature of this state, by Act No. 223 of 1914, which reads, omitting the repealing clause, as follows:
 

 “All actions by or against common carriers for the collection or recovery of erroneous freight charges, and all actions for loss of or damage to shipments o'f freight, shall be prescribed by two years, said prescription to run from the date of shipment.”
 

 
 *299
 
 The suit is one sounding in damages for injury to freight. Pleas of prescription, under the act of 1914 and under a clause of the bill of lading, were filed. These having been referred to the merits, an answer was filed. After a trial on the merits the statutory prescription was sustained.
 

 The suit grows out of the following facts: On May 28,1920, Paul Klopstock & Company, Inc., the plaintiff herein, delivered to the United Fruit Company, the defendant herein, one thousand sacks of flour, at the Port of New Orleans, to be transported by the steamship Lake Figart, of American registry, from the Port of Now Orleans to the Port of Havana, Cuba, to be delivered at the Port of Havana to Cusco & Company. The shipment left the Port of New Orleans on June 4, 1020, and arrived at the Port of Havana on June 7, 1920. '
 

 Notwithstanding the prompt arrival of the shipment at its destination, delivery did not begin until November 16, 1920, and was not completed until December 1, 1920. It is urged by plaintiff that this was due to the gross negligence of defendant, and it is urged by defendant that it was due to the existence of a strike in the Port of Havana, which made it impossible to land the shipment earlier, and which, under the bill of lading, relieves it of liability.
 

 The main question on this appeal relates to the applicability, under the foregoing facts, of the state statute of prescription. It is unquestioned that Congress has the power, under article 1, § 8, of the Constitution of the United States, to regulate commerce with foreign nations and among the several states. It is well established that, when Congress acts under this power, its legislation primes and supersedes state legislation. Congress has passed such legislation, but it has not seen proper to cover every phase of commerce among the states and with foreign nations. Where it has not seen proper to exercise the power intrusted to it, state legislation is
 
 effective.
 
 Campbell v. Haverhill, 155 U. S. 610, 15 S. Ct. 217, 39 L. Ed. 280; Chattanooga Foundry Co. v. City of Atlanta, 203 U. S. 390, 27 S. Ct. 65, 51 L. Ed. 241; Henderson v. Kansas City Southern Railroad, 147 La. 647, 85 So. 625; Hartness v. Iberia & Vermillion Railroad (D. C.) 297 F. 622.
 

 We do not find that Congress has enacted legislation covering such a case as the one here presented. Section 1 of the Interstate Commerce Act, in so far as pertinent, reads as follows:
 

 “The provisions of this chapter shall apply to common carriers engaged in —
 

 “(a) The transportation of passengers or property wholly by railroad, or partly by railroad and partly by water when both are used under a common control, management, or arrangement for a continuous carriage or shipment ; or * * *
 

 “(2) The provisions of this chapter shall also apply to such transportation of passengers and property an.d transmission of intelligence, but only in so far as such transportation or transmission takes place within the United States, but shall not apply —
 

 “(a) To the transportation of passengers or property, or to the receiving, delivering, storage, or handling of property, wholly within one State and not shipped to or from a foreign country from or to any place in the United States as aforesaid; * * *
 

 “(c) To the transportation of passengers or property by a carrier by water where such transportation would not be subject to the provisions of this chapter except for the fact that such carrier absorbs, out of its port-
 
 *301
 
 to-port water rates or out of its proportional through rates, any switching, terminal, lighterage, car rental, trackage, handling, or other ■charges by a rail carrier for services within the switching, drayage, lighterage, or corporate limits of a port terminal or district.” United States Code Annotated, title 49, § 1 (l)(a), and (2) (a, c).
 

 Where the cause of action comes within the Interstate Commerce Act, the prescription applicable to a claim for damages to property is as follows:
 

 “All complaints against carriers subject to this chapter for the recovery of damages not based on overcharges shall be filed with the commission within two years from the time the cause of action accrues, and not after, subject to subdivision (d) of this paragraph.” Section 16(3)(b), 49 USCA § 16(3)(b).
 

 We need not mention subdivision (d), § 16 (3), 49 USCA § 16 (3)(d), but subdivision (e) § 16(3), 49 USCA § 16(3)(e), reads as follows:
 

 “The cause of action in respect of a shipment of property shall, for the purposes of this section, be deemed to' accrue upon delivery or tender of delivery thereof by the ■carrier, and not after.”
 

 From the foregoing it will appear that, while the period of the state and federal prescription are the same, yet that they run from different dates — the state from the date of shipment and the federal from the date of the accrual of the cause of action. Should the state prescription be applicable, plaintiff’s cause of action will have prescribed, for this suit was not filed until June 1, 1922, two years and three days after the date of shipment; whereas, should the federal prescription apply, plaintiff’s claim will not have prescribed, for suit was filed and citation served long prior to two years from the accrual of plaintiff’s cause of action.
 

 In so far as the evidence adduced on the trial shows, the shipment originated at the Port of New Orleans by plaintiff’s delivering the flour there to defendant for transportation to, and delivery at, the Port of Havana. Even the pleadings do not set out any other origin of the shipment. It therefore follows that, so far as the record discloses, the shipment was one entirely by water, and not partly by water and partly by rail from a point in this state, or another state, to the Port of Havana. Hence, under the wording of section 1 of the Interstate Commerce Act, quoted so far as pertinent, supra, the shipment does not come within the act. Therefore the prescription provided by the act does not apply, nor are we advised of any other federal prescription that does apply. Congress has simply not seen proper to exercise its powers concerning such shipments as the present. Wilmington Transportation Co. v. Railroad Commission, 236 U. S. 151, 35 S. Ct. 276, 59 L. Ed. 508; Texas Etc., R. Co. v. Interstate Commerce Commission, 162 U. S. 197, 16 S. Ct. 666, 40 L. Ed. 940.
 

 As Congress has not deemed proper to exercise its powers with reference to such eases as the present, it follows that there is no reason why a pertinent state statute of prescription should not be held to apply. Act No. 223 of 1914, quoted supra, would seem to be in every respect applicable. However, plaintiff argues that the act of 1914 has no bearing on this ease, because it is applicable only to loss or damage that may arise in transit, and not to such as may arise, while the freight is still aboard, after the vessel has reached harbor, for it is said that the ship then ceases to be a carrier, and is, in effect, a warehouseman. We think that this position is not well taken. The statute clearly applies to all loss or damage suffered from the date
 
 *303
 
 of shipment to the date of delivery, where, as is the case here, delivery is finally made.
 

 Plaintiff also argues that the words, “date of shipment” in the statute — the point from which prescription, under the statute, begins to run — have reference to, and mean, the date of departure; plaintiff’s contention bein^ that this interpretation saves its suit from the bar of the statute, with three days to spare.
 

 However, plaintiff’s interpretation of the statute is incorrect. What is here meant by the “date of shipment” is the date the goods are delivered to the carrier for shipment and on which the carrier issues its bill of lading. Goldenberg v. Cutler, 189 App. Div. 489, 178 N. Y. S. 522; Horner v. Daily, 77 Ind. App. 378, 133 N. E. 585; Bank of Taiwan v. Union Nat. Bank (C. C. A.) 1 F.(2d) 65.
 

 Plaintiff also urges that the bar of the prescription was suspended between January 28, 1922, and May 1st of that year, because during that period plaintiff was not in position to file suit, for the reason that defendant was holding all of plaintiff’s papers, required for that purpose. It suffices to say that there is no room here to apply the maxim “Contra non valentem agere non currit prescriptio.” Plaintiff had ample opportunity to sue earlier. Jackson v. Yoist, 21 La. Ann. 108; Mechanics’ & Traders’ Bank v. Sanders, 21 La. Ann. 106.
 

 Our conclusion is that, on the record as made up, there was no error in sustaining the prescription of two years, provided by the law of this state, namely, by Act No. 223 of 1914. However, plaintiff has filed in this court an affidavit, purporting to show that the flour was shipped in two ears on the same date from St. Joseph, Mo., for direct transshipment via United Fruit Company steamer to Cusco & Co., Havana, Cuba, and which also purports to show that the cars, containing the flour, remained on the railroad tracks, at New Orleans, only long enough to transfer the shipment, in the usual course of business, to the steamship direct. To this affidavit are attached copies of railway bills and receipts, which purport to show substantially the same facts.
 

 New evidence may not be introduced in this court. Code Prac., arts. 894, 895. Therefore the court may not consider, on this appeal, the new evidence offered. Plaintiff, anticipating the possibility of such a ruling, has asked in his brief that, in the event our conclusion be adverse to it, the case be remanded. We may remand the case, in the furtherance of justice, to afford an opportunity to establish the true situation. Gleason & McManus v. Sheriff, 20 La. Ann. 266; State ex rel. Nelson v. Police Jury, 32 La. Ann. 884; State ex rel. Ranger v. City of New Orleans, 34 La. Ann. 202; Code Prac. art. 906.
 

 Defendant objects to the case being remanded, because nowhere in plaintiff’s petition does it allege that the shipment was made partly by rail from within or without the state for transshipment to Havana, but simply alleges that plaintiff delivered the flour to defendant at the Port of New Orleans for shipment to Havana. '
 

 Plaintiff, however, desires the evidence to defeat the prescription of two years, provided by the law of this state, which was sustained by the trial court, by showing the inapplicability of that prescription to the case. Plaintiff was not called upon to anticipate the plea of prescription in its pleadings, and as replications are unknown to our law, he had the right to offer any evidence, at his command, to defeat the plea without further pleading. The objection is not well founded.
 

 The foregoing evidence is important to plaintiff in its effort to defeat the plea of prescription, and if it exists its production is
 
 *305
 
 necessary in the administration of justice. The fact that the flour may have been shipped to New Orleans by rail, under one set of bills of lading, and, at New Orleans, have been transshipped by the shipper at once, to Havana, under a different bill of lading, where the original intention was to ship direct to Havana, does not prevent the shipment from coming within the scope of the Interstate Commerce Act. The determining factor as to whether-or not a shipment is interstate is whether in fact there is intended a continuity of movement. This cannot be determined by the mere forms of billing or contract. Chicago M. & St. Paul R. R. v. State of Iowa, 233 U. S. 334, 34 S. Ct. 592, 58 L. Ed. 988; Railroad Commission of Ohio v. Worthington, 225 U. S. 101, 32 S. Ct. 653, 56 L. Ed. 1004; Railroad Commission of Louisiana v. Texas Pacific Railroad, 229 U. S. 336, 33 S. Ct. 837, 57 L. Ed. 1215; In re Bills of Lading, 52 I. C. C. 671.
 

 As to whether the affidavit shows that the flour was transported by the carriers under a common control management or arrangement, as provided by section 1 of the Interstate Commerce Act, we think that the copies of the railway bills and receipts attached to the affidavit sufficiently suggest a common arrangement to justify us in remanding the case. These bills and receipts purport to show on their face that when the shipment left Missouri its destination was Havana^ via defendant’s steamship line.
 

 We have not considered the plea of prescription, based on section 22 of the bill of lading issued by defendant, relating to the thirty days’ notice to be given of claims, and the instituting of suit within six months after the delivery of the goods; because if this shipment is governed by the federal law, the clause is in direct conflict with that law, and hence is null. 49 USCA, p. 77, § 20, par. 11. If the shipment from New Orleans to Havana is controlled by the state law, a consideration of that clause is unnecessary, because the state prescription of two years will be then good.
 

 We have concluded, in the exercise of our discretion, and in the furtherance of justice, to remand this case for further i>roceedings.
 

 For the reasons assigned, the judgment appealed from is set aside, and this case is remanded for further proceedings according to law; appellant to pay the costs of this appeal, the remaining costs to abide the final decision of this case.
 

 O’NIELL, C. J.,
 

 is of the opinion that Act No. 223 of 1914 is applicable, and therefore that the judgment should be affirmed.