On December 1, 1924, the defendant insurance company issued a policy on the life of Edward Wicker in the sum of $530, and the same company issued another policy on the life of the same insured on April 6, 1925, for $510. The insured died on May 22, 1935, and plaintiff, as his widow and sole heir, has brought this suit to recover the amount of both policies, the sum of $1,040. Both policies are made payable to the executor or administrator of the insured.
The defense is that both policies lapsed on February 10, 1930, for nonpayment of premiums; that under the provisions of the laws of this state there was sufficient reserve under the first-mentioned policy to carry it as extended insurance to February 4, 1932, and sufficient reserve on the lastnamed policy at the date of lapse to carry it as extended insurance to November 27, 1931; that at the expiration of said extended insurance dates both of said policies completely lapsed and were not in effect on the date of the death of the insured. *Page 880 
Plaintiff claims that the last premium was paid on the first-mentioned policy on February 4, 1932, and on the last-mentioned policy on February 8, 1933, and that the reserve on both policies at the time of the lapse was sufficient to extend the insurance to the date on which the insured died. In fact, plaintiff concedes that if the last payment of premiums was made on the date claimed by defendant, there is no liability under the policies, and, on the other hand, if the last premiums were paid on the dates claimed by plaintiff, defendant admits that there is liability under at least one of the policies.
The learned trial judge found from the evidence that the policies lapsed for nonpayment of premiums on the date claimed by the defendant and therefore dismissed plaintiff's suit. She has appealed.
Plaintiff could not produce any receipts showing that she had paid the premiums up to the dates on which she claims that the policies lapsed and the extended insurance period began. She testified that shortly after her husband died she was compelled to go to the hospital in New Orleans for treatment, and during her absence the receipt books were lost or destroyed by those who cleaned her house for her; that she had the books before she left, but could not find them on her return. She testified that she remembered seeing in the receipt book when the last payments were made, on February 4, 1932, and February 8, 1933. Two white men, Ernest Helm and Thurman Simmons, testified to having seen the receipt books on which the last payments of premiums were made in February, 1932, and February, 1933, respectively. Two colored women also testified that they saw two receipt books before plaintiff went to the hospital and saw the entry of the last receipt in the books on the dates testified to by plaintiff and the two white men. Another colored woman testified that she saw one receipt book with the last payment entered therein in February, 1932.
On September 27, 1935, a little over two months after the death of her husband, plaintiff wrote the defendant insurance company asking for information as to the status of these two policies and three others, and in reply to that letter defendant wrote plaintiff under date of October 3, 1935, that one of the policies lapsed with date of last payment February 4, 1932, and the other with date of last payment on February 8, 1933; the former policy being carried under the extended insurance provision 1 year and 359 days and the other 1 year and 290 days from the respective dates of their lapse. If this information was correct, at least one of the policies was in force when the insured died. On September 3, previous to the above letter to the plaintiff, the defendant had written its Baton Rouge office giving the same information as to the last payments and the extended insurance periods as was given in the letter to plaintiff in regard to these two policies.
The depositions of three employees of defendant company were taken, all of whom testified that the records of the company show that these policies lapsed with the date of last payment on February 3, 1930. The employee who wrote the letter addressed to plaintiff under date of October 3, 1935. above referred to, in explanation of the difference in date shown in that letter as to the date of last payments and that shown from the other records of the company, stated in his first deposition that the error in these dates arose through an incorrect transcription by the typist to whom the letter had been dictated through a dictaphone; that he had secured the dates of the last payments on these policies from the tracing slips attached to the original applications, which slips attached to the original applications, showed these last payments on February 3, 1930.
Defendant took another deposition of this witness in an effort to further explain the reason for the discrepancy. In this second deposition he states that the incorrect dates of the last payments given in the letter to plaintiff on October 3d, were not errors in transcribing his dictation, nor did he obtain the information contained in that letter from the tracing slips attached to the applications as he had formerly testified, but that he had gotten the information from his letter of September 3d addressed to the Baton Rouge office which contained the same incorrect information as that in the letter to plaintiff. It is rather strange and significant, however, that he did not explain where he got the incorrect information contained in his letter of September 3d, if that information was incorrect.
Mr. Perritt, the local agent of defendant, testified that he collected the last premiums on these policies on February 3, 1930; that he lapsed these policies on March 10, 1930, after the grace period had expired and no further payments were made. *Page 881 
Judging from the statements made by the trial judge in his reasons for judgment, we infer that he gave great weight to the evidence of Mr. Perritt in resolving the facts as to the date of these last payments in favor of the contention of defendant. In fact, it appears that he not only relied to a large extent on Mr. Perritt's testimony in reaching the conclusion that defendant had substantiated its position with reference to the lapse of the policies, but he also relied on this testimony in impeaching and disproving the testimony of plaintiff and her witnesses. For instance, reference is made to the testimony of plaintiff to the effect that Mr. Perritt, the agent, sometimes wrote in the receipt book the name of the month, such as "February" or "Feb.," while Mr. Perritt testified that he never wrote the month, but used numbers to designate the date such as 2/4/32. We are satisfied that the trial judge was justified in reaching the conclusion that he did on the facts as they were before him.
However, since the appeal was lodged in this court, plaintiff and appellant has filed a motion to have the case remanded for the purpose of permitting her to file in evidence certain receipts which she claims to have found since the case was tried. These receipts are annexed to her motion, but, of course, cannot be considered as evidence in the case, and we have examined them only for the purpose of determining whether or not they justify a remand of the case. The first receipt book annexed to the motion shows payments of premiums on these two policies from July 7, 1924, to October 18, 1926, to the agent, Delaune. The second book shows payments to the agent, Perritt, from July 4, 1927, to July 25, 1927, and the third receipt book shows payment to this agent from August 22, 1927, to December 10, 1928; that the policies were then carried by a lien thereon until July 29, 1929; that payments of premiums were made to Mr. Perritt, the agent, to December 30, 1930. There is also filed with the motion a receipt signed by Mr. Perritt on a blank piece of paper for $3 dated 9-9-29.
Of course, none of these receipts bring the payments up to a date beyond the date to which defendant claims that payments ceased. However, we do notice that these receipts contradict Mr. Perritt's testimony in several particulars. In the first place, he testified that he began collecting premiums from plaintiff on these policies about 1929 or 1930 while these receipt books show that he began these collections as early as July, 1927. He further testified that he never wrote the month in these books in showing date of payment, but always used numbers such as 2/4/32 to show the date, while these books show that on numerous occasions he wrote the name of the month or its abbreviation; that he never wrote a receipt other than in a regular receipt book, while it appears that he did write at least this one receipt on a separate piece of paper; that all receipts written by him were in blue books like the sample introduced in evidence, while the two books attached to the motion in which he wrote receipts are of a brown or yellow color as plaintiff and most of her witnesses testified they were.
We do not know if this new evi dence would change the opinion of the trial judge. It may not, but it seems fair and proper to give the trial judge the opportunity of considering this evidence. We think also that the witness, Perritt, is entitled to an opportunity to explain if he can, these apparent discrepancies.
In view of this situation and in view of the rather unsatisfactory explanation made by defendant for writing the two letters showing the dates of lapse of the policies as now claimed by plaintiff, and in furtherance of justice, we have decided to remand the case. We have ample authority and precedent for this action. Code Prac. art. 906; Klopstock Co., Inc., v. United Fruit Co., 171 La. 296, 131 So. 25; Barry v. Pike, 21 La.Ann. 221; McDaniel v. Roseland Box Co., Inc., 18 La.App. 136,136 So. 752.
For the reasons assigned, it is ordered that the judgment appealed from be and the same is hereby set aside and annulled, and it is now ordered that the case be remanded to the district court for the purpose of receiving in evidence the documents annexed to the motion filed in this court to remand, and for the introduction and reception of such additional evidence by either side as the trial court may deem proper and relevant to a correct disposition of the cause; cost to await the final termination of the case.
 *Page 196